UNITED STATES of America, Appellant,

v.

Lemrick NELSON, Jr., Defendant–
Appellee.

No. 421, Docket 95–1271.

United States Court of Appeals,
Second Circuit.

Argued Aug. 29, 1995.

Decided Oct. 17, 1995.

Alan M. Vinegrad, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Valerie Caproni, David C. James, Assistant United States Attorneys, of counsel), for Appellant.

Christine E. Yaris, New York City (Trevor L.F. Headley, of counsel), for Defendant–Appellee.

Before: CARDAMONE, MINER and CALABRESI, Circuit Judges.

MINER, Circuit Judge:

The government appeals from an order entered in the United States District Court for the Eastern District of New York (Trager, J.) denying its motion to transfer defendant-appellee, Lemrick Nelson, Jr., who stands accused of juvenile delinquency, for adult criminal prosecution pursuant to 18 U.S.C. §§ 5031 *et seq.* The district court determined, following a mandatory review of the pertinent factors enumerated in the statute, that the "interest of justice" would not be served by a transfer.

For the reasons that follow, we vacate the transfer order and remand for further findings and reconsideration of the order by the district court.

## BACKGROUND

On August 10, 1994, the United States Attorney for the Eastern District of New York filed a Juvenile Information charging Nelson with an act of juvenile delinquency as follows:

On or about August 19, 1991, in the Eastern District of New York, the defendant LEMRICK NELSON, JR. and others, by force and threat of force, did willfully injure, intimidate and interfere with, and attempt to injure, intimidate and interfere with, Yankel Rosenbaum, an Orthodox Jew, because of his religion and because he was enjoying facilities provided and administered by a subdivision of the State of New York, namely, the public streets provided and administered by the City of New York, and bodily injury to and the death of Yankel Rosenbaum did result.

The Information cites 18 U.S.C. § 245(b)(2)(B), which imposes criminal penalties for civil rights violations involving interference with federally protected activities, as well as 18 U.S.C. §§ 5032 *et seq.*, which provides for juvenile proceedings in the district courts. Nelson was 16 years of age at the time of the incident subject of the Information.

The Government's version of the events that gave rise to the accusation, which we must take as true for purposes of this appeal, and which are, in any event, largely uncontested, is as follows. An automobile driven by a Hasidic Jew struck two black children playing in the Crown Heights neighborhood of Brooklyn during the evening of August 19, 1991. One child was killed, and the other was seriously injured. Rumors spread throughout the community, during the course of the evening, that ambulance personnel responding to the scene of the accident first treated the Jewish driver rather than the two seriously injured children pinned beneath the automobile. A large crowd gathered at the accident scene, and people began throwing rocks and bottles and verbally protesting the treatment of the injured children. After the automobile involved in the accident was towed away, a black man incited the crowd with shouts of "no justice, no peace" and "let's go to Kingston Avenue [a street of

predominantly Jewish residents in Crown Heights] and get a Jew." Accompanied by a number of black youths, this man left the accident scene and headed in the direction of Kingston Avenue, several blocks away.

As the group moved toward Kingston Avenue, various members of the group threw rocks and bottles at homes and vandalized cars. At a point approximately one block past Kingston Avenue, Yankel Rosenbaum had the misfortune to be espied by Nelson and some 10 other black individuals. One of them shouted, "there's a Jew, get the Jew," and they chased Rosenbaum across the street and attacked him. Rosenbaum, having been stabbed in the mid-section of his body by Nelson, was left bleeding in the street. The police apprehended Nelson approximately one block away from the stabbing scene. They found in Nelson's pocket a bloody knife with the word "Killer" on the handle. When Rosenbaum confronted Nelson during a "show-up" identification, he positively identified Nelson as the person who had stabbed him. Rosenbaum died in the early morning hours of the following day at the hospital to which he had been taken following the incident. Shortly thereafter, Nelson orally admitted to the police that he had stabbed Rosenbaum.

For causing the death of Yankel Rosenbaum, Nelson was charged as an adult with second degree murder under New York law on August 26, 1991. After a six-week trial in Kings County Supreme Court, Nelson was acquitted in October, 1992 of all charges arising out of the events of August 19, 1991. He was then 17 years of age. Following his acquittal, Nelson relocated to a suburb of Atlanta, Georgia, where he lived with friends and attended high school.

In early 1994, Nelson, then 18, attacked a classmate with a razor blade for reporting to school authorities that Nelson had stolen money from another classmate. When he was arrested for the attack, Nelson was carrying a scalpel as a concealed weapon. When he was expelled from school as a result of these incidents, Nelson physically resisted the police officers who came to arrest him after he refused to leave the school grounds. Charged as an adult offender with aggravat- ed assault and carrying a concealed weapon, Nelson entered a plea of guilty to the charges in the Superior Court of DeKalb County, Georgia on February 6, 1995. He was sentenced to 90 to 120 days in a boot camp program administered by the Georgia Department of Corrections, three years of probation, and banishment from the State of Georgia.

Nelson was born on July 31, 1975 and was 19 years of age at the time the federal Information was filed. In order to proceed with the charge of juvenile delinquency set forth in the Information, the United States Attorney for the Eastern District of New York certified, in accordance with the provisions of 18 U.S.C. § 5032 and the authority delegated to him by the Attorney General of the United States, that

> The defendant LEMRICK NELSON, JR. is a juvenile currently charged with a violation of Title 18, United States Code, Sections 2 and 245(b)(2)(B); this offense is a crime of violence that is a felony; and there is a substantial Federal interest in the case and the offense to warrant the exercise of Federal jurisdiction.

Five days after the Information was filed, the government moved to transfer Nelson for adult criminal prosecution. The statutory provision for transfer requires a finding, after a hearing, that the transfer would be in the interest of justice and also provides:

> Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.

The district court began its review of these factors at a hearing held on March 30, 1995. At that hearing, the court reviewed the is-

sues to be resolved and the parties substantially agreed that the issues could be resolved on the papers submitted, including certain psychological reports submitted by experts retained by the government and by Nelson. The court strongly indicated that the nature of the offense factor, referred to as "Factor 2," was the only one that might favor the government's position in this case: "I guess my biggest problem in these papers is on Factor 2, which is probably the strongest, if not the only, factor that operates in favor of adult status." The court indicated that "the real question" was "the nature of [the government's] proof" with regard to that factor. The hearing was then adjourned to April 12, 1995, at which time further argument was heard on the submitted papers.

At the start of the April 12 hearing, the court addressed the request of Nelson's attorney to have Nelson testify on the transfer factors. The court responded to the request as follows:

> I guess my question is, why do you want it, in light of what I said at the last hearing, that essentially I had resolved the five factors, other than the seriousness of the crime, in favor of the defendant or weighing in the defendant's favor.

The court then heard further argument, principally on the seriousness factor and then announced its decision from the Bench. Before reviewing its findings as to each of the factors, the court stated its conclusion: "All but one of the statutory factors here weigh in favor of treating Mr. Nelson as a juvenile for the purposes of these proceedings."

The court found that the age and social background factor favored the retention of juvenile status. Nelson was 16 years of age at that time of the offense and the district court indicated that the fact that Nelson was then 19 would not be used against him in light of the government's delay in filing the federal charge. The court opined that Nelson is "the product of a less than stable family and social environment" but "does not suffer from significant psychopathology or have strong anti-social tendencies."

In reviewing the nature of the alleged offense, the district court noted that there were four possible offenses that would govern the sentence to be imposed under the federal homicide statute: first degree murder, second degree murder, voluntary manslaughter and involuntary manslaughter. The court stated: "Now, even without the benefit of evidence presented at trial, I think that we can rule out either of the extremes, first degree murder and involuntary manslaughter." The court then reviewed the sentencing guidelines for second degree murder and voluntary manslaughter and found that the difference between adult and juvenile status in respect of length of loss of freedom would be substantial in the case of a second degree murder conviction but not in the case of a voluntary manslaughter conviction. The court went on to say: "[T]o determine which category, second degree murder or voluntary manslaughter, this falls into, is something that I really could not determine without a full trial." Despite these findings, the court apparently determined that "the undoubted and conceded seriousness of the alleged offense" was a significant statutory factor favoring the government's position. Indeed, it believed that it was the only factor to favor the government.

With respect to "the extent and nature of the juvenile's prior delinquency record," the district court found that "Mr. Nelson has no prior delinquency record." Acknowledging that Nelson committed an offense after his involvement in the incident giving rise to the present charge, the district court stated that "the transfer statute does not provide for the consideration of offenses committed subsequent to the charged offense in deciding such a motion." In the court's view, subsequent offenses "may . . . be relevant to the issue of rehabilitation."

In analyzing "the juvenile's present intellectual development and psychological maturity," the district court observed that Nelson has a low emotional maturity and an IQ of low average to average. According to the district court, the government's expert, Dr. Berrill, described Nelson "as essentially functioning as a young adult." Nelson's expert, Dr. Landsmark, indicated that Nelson "is an emotionally constricted and guarded young man, who perceives his world as threatening." Dr. Landsmark further indi-

cated that Nelson "had an immature personality, with traits of recklessness, foolishness and poor judgment." The court concluded, after reviewing the reports of both experts, that "the defendant does not appear to be suffering from significant psychopathology, the kind that would lead one to be concerned that we're dealing with someone who would—whose personality would indicate a clear tendency towards future violence."

As to the nature and extent of past treatment efforts, the finding was that there was only one effort made at counseling while Nelson was in school. Nelson's response to that effort was said to be "rather negative." Apparently, Dr. Berrill concluded that Nelson was not a good candidate for individual psychotherapy but "might benefit" from group therapy. The district court noted that "even in the opinion of the government's expert, there is at very least a glimmer of hope in future treatment."

In addressing "the availability of programs designed to treat the juvenile's behavioral problems," the district court said that it would "not accept the government's argument that there are no appropriate federal juvenile facilities to treat Mr. Nelson's underlying psychological problems." The court noted that the Attorney General of the United States had sufficient authority to contract with state and local governments to provide the necessary services. According to the court, "the government must be compelled, should the defendant be convicted, to find a suitable program for Mr. Nelson, and enter into a contract with that facility, and then place Mr. Nelson in that facility."

In concluding its review of the statutory factors and denying the motion, the court stated: "I think I must rely on the statutory presumption in favor of retaining the defendant's juvenile status."

## DISCUSSION

■ A juvenile fifteen years of age or older who is "alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence" may be proceeded against as an adult where a district court, after a transfer motion by the Attorney General, finds that it is "in the interest of justice" to grant a transfer. 18 U.S.C. § 5032. Nelson is eligible for prosecution as an adult: he was sixteen years of age at the time of the commission of the offense with which he is charged; he was accused of a crime of violence, i.e., interference with a federally protected activity by wilfully causing bodily injury resulting in death; and the United States Attorney for the Eastern District of New York, by delegation of the Attorney General, has moved for transfer.

■ The burden is, of course, on the government to establish that transfer to adult status is warranted, since there is a presumption in favor of juvenile adjudication. *United States v. A.R.*, 38 F.3d 699, 706 (3d Cir.1994). In determining whether transfer would be in the interest of justice, the district court is constrained to consider six factors and to make findings in the record regarding each one of them. 18 U.S.C. § 5032. The factors are: (1) the juvenile's age and social background; (2) the nature of the offense alleged; (3) the nature and extent of any prior delinquency record; (4) present psychological maturity and intellectual development; (5) the juvenile's response to past treatment efforts and the nature of those efforts; and (6) available programs that are designed to treat the juvenile's behavior problems. *Id.* The district court considered each of these factors in arriving at its decision to deny the government's motion to transfer Nelson for adult prosecution.

■ The six statutory factors need not be accorded equal weight by the district court, which may balance the factors in any way that seems appropriate to it. *United States v. Juvenile Male # 1*, 47 F.3d 68, 71 (2d Cir.1995). The decision of the district court is a discretionary one and will not be disturbed except upon our finding of an abuse of discretion. *Id.* A district court is said to abuse its discretion when it fails to make the required factual findings or where the findings it does make are clearly erroneous. *Id.* The district court's interpretation of each factor presents a question of law. *See In re Sealed Case (Juvenile Transfer )*, 893 F.2d 363, 369 & n. 13 (D.C.Cir.1990). According-

ly, we review the district court's interpretation of the statutory factors *de novo.*

It seems to us that the district court erred in refusing to consider Nelson's age at the time of the transfer proceeding. Referring to earlier observations that the delay in the federal proceedings was occasioned by deference to state authorities, the district court stated: "[W]e've already discussed at length the whole question of the impact of his present age, and the reasons for the delay in the prosecution, which I think are justifiable by governmental policy, but at the same time, strike me as not to be used to interpret this factor against the defendant." The court correctly focused on the defendant's age at the time of the offense since the statute specifies *current* age when it wanted that age to be the exclusive inquiry. *E.g.,* 18 U.S.C. § 5037(c) (juveniles with current age of 18–21 can be sentenced to jail for up to five years); 18 U.S.C. § 5031 (requiring application of Act if defendant has not turned 21 by time action is commenced). But unless the government intentionally delays the filing of juvenile charges, there is every reason to give weight also to the age at the time of the transfer motion. The statutory factor specifies only "age," and certainly, current age is significant for a determination of whether juvenile-type rehabilitation programs would be appropriate for the individual subject of the transfer application. *See In re J. Anthony G.,* 690 F.Supp. 760, 766 (S.D.Ind.1988). Indeed, "the more mature a juvenile becomes, the harder it becomes to reform the juvenile's values and behavior." *United States v. H.S., Jr.,* 717 F.Supp. 911, 917 (D.D.C.1989), *rev'd on other grounds sub nom. In re Sealed Case,* 893 F.2d at 363. Factual findings must be made as to how Nelson, now twenty years of age, would fit into a program for the rehabilitation of juvenile delinquents. By completely eliminating current age from its assessment, the district court misinterpreted the full significance of the age factor.

The nature of the offense alleged is the second statutory factor that must be considered in determining whether a transfer would be in the interest of justice. The district court properly acknowledged "the undoubted and conceded seriousness of the alleged offense" and decided that the nature of the alleged offense factor favored the government's position. Indeed, the district court decided that it was the *only* factor that weighed in favor of transfer. In arriving at its conclusion, however, the court undertook an unwarranted examination of the strength of the government's evidence. We think that it is the better practice for the district court simply to assume that, for the purposes of the transfer hearing, the juvenile committed the offense charged in the Information. *See In re Sealed Case,* 893 F.2d at 369; *United States v. Doe,* 871 F.2d 1248, 1250 n. 1 (5th Cir.), *cert. denied,* 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989). This statutory factor calls for findings regarding the nature of the offense *alleged* and not some other offense, whether it be a greater offense or even a lesser included one. In this case, the district judge referred to the federal homicide statute, the provisions of which might govern the punishment for the offense charged. *See* 18 U.S.C. § 245(b) (providing for imprisonment for "any term of years or for life" where death results from interference with federally protected activities); U.S.S.G. § 2H1.1, comment. (n. 1); U.S.S.G. § 2H1.3, comment. (n. 1) (referring to "underlying offense" in assessing penalty for violation of § 245).

In reviewing the homicide statute, the district judge identified four possible offenses that would govern the sentence to be imposed under the federal homicide statute: first degree murder, second degree murder, voluntary manslaughter and involuntary manslaughter. The court, based on the undeveloped record, then "rule[d] out either of the extremes, first degree murder and involuntary manslaughter." Yet, the offense as charged fit within the provisions of 18 U.S.C. § 1111, which defines as first degree murder "any . . . kind of willful, deliberate, malicious, and premeditated killing." It was not for the district court to evaluate the strength of the government's evidence on a motion to transfer. The district court's evaluation here served to minimize the seriousness of the offense and its importance in the overall assessment of interest of justice in this case,

even though the court found this factor as favoring transfer. On remand, the district court should reevaluate the weight to be given to the nature of the offense in this case, bearing in mind that when a crime is particularly serious, the district court is justified in weighing this factor more heavily than the other statutory factors. *See United States v. A.R.*, 38 F.3d at 705; *United States v. Hemmer*, 729 F.2d 10, 17–18 (1st Cir.), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). The heinous nature of the crime of intentional murder certainly may be a factor entitled to special weight. *See United States v. A.W.J.*, 804 F.2d 492, 493 (8th Cir.1986).

With respect to the third statutory factor, "the extent and nature of the juvenile's prior delinquency record," the district court determined that it would consider Nelson's convictions in the State of Georgia only as "relevant to the issue of rehabilitation." That may well be. But if that is so, the court erred in how it applied the prospects of rehabilitation in relation to the fifth factor.

■ Nelson was convicted as an adult for two serious offenses in the State of Georgia—aggravated assault and carrying a concealed weapon. The fact that the acts giving rise to these convictions took place after the date of the offense alleged in the case at bar does not alter the importance of considering these convictions on the transfer motion.

■ Rehabilitation clearly is one of the primary purposes of the juvenile delinquency provisions. However, "while rehabilitation is a priority, the courts are not required to apply the juvenile justice system to a juvenile's diagnosed intellectual or behavioral problems when it would likely prove to be anything more than a futile gesture." *United States v. Doe*, 871 F.2d at 1253. Where a juvenile has committed serious adult offenses shortly after the alleged act of delinquency, a presumption may well arise that it would be a futile gesture to pursue juvenile proceedings. Moreover, if one of the primary purposes of the special treatment provided for juveniles is to avoid the stigma of a criminal conviction, *see United States v. Juvenile Male # 1*, 47 F.3d at 71, that purpose cannot

be served in the case of one who already stands convicted as an adult.

In assessing the prospects of rehabilitation in connection with the review of Nelson's response to past treatment efforts and the nature of those efforts (the fifth factor), the district court in its findings referred to "a glimmer of hope in future treatment." At the March 30 hearing, prior to the formal findings placed upon the record by the district court at the conclusion of the April 12 hearing, the district court referred to the "glimmer of hope test" and observed "that the glimmer of hope test has been met here, which I think the Second Circuit while it hasn't endorsed it has sustained and which I am going to apply here."

■ We never have endorsed a "glimmer of hope" test. In *United States v. Juvenile Male # 1*, 47 F.3d at 70, we observed that the district court "noted that [the psychiatrist] saw 'a glimmer of hope in future treatment.'" This observation appeared only in the factual background portion of our opinion and did not enunciate any legal standard. The district court's legal standard was not discussed on appeal and we therefore have not yet addressed the specific standard that should be used here. Now, squarely presented with this question, we reject explicitly the "glimmer of hope" test. Indeed, a glimmer of hope in future treatment, standing alone, would be insufficient to warrant a finding that rehabilitation is likely. *See United States v. Doe*, 871 F.2d at 1253. Our opinion in *Juvenile Male # 1* identified a number of factual findings by the district court that supported a potential for future rehabilitation. *See* 47 F.3d at 70. A glimmer of hope in future treatment was only one of these.

■ Finally, we think that the finding of the district court was inadequate as regards the sixth factor, "the availability of programs designed to treat the juvenile's behavioral problems." Although a district court need not identify a particular program that would accept the juvenile, *id.* at 72, there is no indication that the district court in this case made any inquiry into juvenile programs available for someone of Nelson's age. The district court merely rejected the government's argument that no appropriate

federal juvenile facilities were available and proceeded to note that the Attorney General had sufficient authority to contract for placement in state or local facilities. We think that it is important in this case for the district court to make an inquiry into juvenile programs available and as to how Nelson, at twenty years of age, would fit into such programs and how much time he would serve as a juvenile. *See In re J. Anthony G.*, 690 F.Supp. at 765. For the government to carry its burden of persuasion, it must, of course, do more than merely assert the unavailability of an appropriate program. It must make a showing that it has investigated various options but is still unable to find a suitable and available program. Because this burden is placed on the government, the district court cannot require the defendant to locate his own correctional facility. Even where a district court determines that there is a better chance of rehabilitation in adult programs, it must base the decision on a comparison of adult and juvenile facilities. *See United States v. Gerald N.*, 900 F.2d 189, 191 (9th Cir.1990). No such inquiry was made here.

## CONCLUSION

For the foregoing reasons, we vacate the order of the district court and remand for further findings and reconsideration in accordance with the foregoing. *See United States v. Romulus*, 949 F.2d 713, 715–16 (4th Cir. 1991), *cert. denied,* 503 U.S. 992, 112 S.Ct. 1690, 118 L.Ed.2d 403 (1992); *United States v. C.G.*, 736 F.2d 1474, 1478–79 (11th Cir. 1984).