UNITED STATES of America, Appellee,

v.

Lemrick NELSON, Jr., Defendant–Appellant.

No. 2132, Docket 96–1213.

United States Court of Appeals,
Second Circuit.

Argued June 21, 1996.

Decided July 25, 1996.

"there can be no assurance that competitors will not produce equivalent or superior products."

Christine E. Yaris, New York City (Trevor L.F. Headley, Brooklyn, NY, of counsel), for Defendant–Appellant.

Alan M. Vinegrad, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Valerie Caproni, Asst. U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, of counsel), for Appellee.

Before: MAHONEY and McLAUGHLIN, Circuit Judges, and CARMAN, Judge.*

McLAUGHLIN, Circuit Judge:

Lemrick Nelson, Jr., appeals from a decision of the United States District Court for the Eastern District of New York (David G. Trager, *J.*) granting the government's motion to transfer Nelson, who stands accused of juvenile delinquency, for adult criminal prosecution. Following a previous appeal to and remand by this Court, *see United States v. Nelson*, 68 F.3d 583 (2d Cir.1995), the district court found that such transfer was warranted. We affirm.

## BACKGROUND

During the evening of August 19, 1991, an automobile driven by a Hasidic Jew struck two black children playing in the Crown Heights section of Brooklyn. One child was killed, and the other was seriously injured. Rumors quickly spread that ambulance personnel responding to the accident first treated the driver rather than the two seriously

---

* Honorable Gregory W. Carman, of the United States Court of International Trade, sitting by designation.

injured children pinned beneath the automobile. A large crowd gathered at the accident scene, and people began shouting, throwing rocks and bottles, and protesting the treatment of the injured children. A black man incited the crowd with shouts of "no justice, no peace" and "let's go to Kingston Avenue and get a Jew." Accompanied by a number of black youths, this man left the accident scene and headed in the direction of Kingston Avenue, several blocks away.

As the group moved toward Kingston Avenue, unruly individuals threw rocks and bottles at homes and vandalized cars. Sixteen-year-old Lemrick Nelson and others from the crowd spotted Yankel Rosenbaum on the street. One of them shouted, "there's a Jew, get the Jew," and they chased Rosenbaum across the street and attacked him. During the melee, Nelson allegedly stabbed Rosenbaum and fled, leaving Rosenbaum bleeding in the street. The police apprehended Nelson approximately one block from the stabbing scene, and found a bloody knife in his pocket. At a "show-up" identification, the mortally-wounded Rosenbaum positively identified Nelson as the person who had stabbed him. Rosenbaum died the next morning in the hospital. Shortly thereafter, Nelson allegedly admitted to the police that he had stabbed Rosenbaum.

Nelson was charged in New York state court, as an adult, with second degree murder. After a six-week jury trial, he was acquitted.

On August 10, 1994, the United States Attorney filed a Juvenile Information in the United States District Court for the Eastern District of New York, charging Nelson with juvenile delinquency, in violation of 18 U.S.C. §§ 5032 et seq., and 18 U.S.C. § 245(b)(2)(B), as follows:

On or about August 19, 1991, in the Eastern District of New York, the defendant LEMRICK NELSON, JR. and others, by force and threat of force, did willfully injure, intimidate and interfere with, and attempt to injure, intimidate and interfere with, Yankel Rosenbaum, an Orthodox Jew, because of his religion and because he was enjoying facilities provided and administered by a subdivision of the State of New York, namely, the public streets provided and administered by the City of New York, and bodily injury to and the death of Yankel Rosenbaum did result.

Nelson, although nineteen years old at the time the federal Information was filed, was charged with "juvenile delinquency" because he was only sixteen when Rosenbaum was stabbed.

The government moved to "transfer" Nelson to adult status. The federal statute governing transfer provides:

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: [(1)] the age and social background of the juvenile; [(2)] the nature of the alleged offense; [(3)] the extent and nature of the juvenile's prior delinquency record; [(4)] the juvenile's present intellectual development and psychological maturity; [(5)] the nature of past treatment efforts and the juvenile's response to such efforts; [and (6)] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032. The district court examined and weighed these factors, and concluded that Nelson should be tried as a juvenile. This conclusion rested, at least in part, on the court's finding that Nelson showed a "glimmer of hope" of rehabilitation. As discussed below, the juvenile's potential for rehabilitation is a major consideration in the transfer decision.

The government appealed. We vacated the district court's decision, and remanded for further consideration. See Nelson, 68 F.3d at 591. In so holding, we expressly rejected the "glimmer of hope" test:

In assessing the prospects of rehabilitation ... the district court in its findings referred to "a glimmer of hope in future treatment." At the ... hearing, ... the district court referred to the "glimmer of hope test" and observed "that the glimmer of hope test has been met here, which I think the Second Circuit while it hasn't endorsed it has sustained and which I am going to apply here."

We have never endorsed a "glimmer of hope" test. In *United States v. Juvenile Male # 1,* 47 F.3d [68, 70 (2d Cir.1995)], we observed that the district court "noted that [the psychiatrist] saw 'a glimmer of hope in future treatment.'" This observation appeared only in the factual background portion of our opinion and did not enunciate any legal standard. The district court's legal standard was not discussed on appeal [in *Juvenile Male # 1*] and we therefore have not yet addressed the specific standard that should be used here. Now, squarely presented with this question, we reject explicitly the "glimmer of hope" test. Indeed, a glimmer of hope in future treatment, standing alone, would be insufficient to warrant a finding that rehabilitation is likely. *See United States v. Doe,* 871 F.2d [1248, 1253 (5th Cir.), *cert. denied,* 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989)]. Our opinion in *Juvenile Male # 1* identified a number of factual findings by the district court that supported a potential for future rehabilitation. *See* 47 F.3d at 70. A glimmer of hope in future treatment was only one of these. *Nelson,* 68 F.3d at 590.

On remand, the district court reevaluated the six statutory factors consistent with our first opinion, finding that the seriousness of the offense strongly favored transfer to adult status, but that the other factors either favored continued juvenile treatment, or were neutral.

The court then turned to a general assessment of Nelson's potential for rehabilitation. The court noted that, while we had categorically rejected the "glimmer of hope" standard for evaluating the defendant's potential for rehabilitation, we did not enunciate what alternative standard should be used. *See United States v. Nelson,* 921 F.Supp. 105, 120–22 (E.D.N.Y.1996).

The district court isolated two alternative standards that it thought could be inferred from our first decision: (1) that there be a "reasonable probability" of rehabilitation; or (2) that rehabilitation be "likely." *Id.* at 120–21. The second standard ("likely") stemmed from this Court's statement that "a glimmer of hope in future treatment, standing alone, would be insufficient to warrant a finding that rehabilitation is likely." *Nelson,* 68 F.3d at 590 (citation omitted). The first standard ("reasonable probability") was drawn from the concomitant citation to *Doe,* 871 F.2d at 1253 (applying a "realistic chance of rehabilitative potential" standard). The district court also concluded that a "reasonable probability" of rehabilitation was a lesser degree of certainty than a "likelihood" of rehabilitation.

Drawing on extensive testimony from psychologists and other evidence in the record, the district court determined that Nelson's chances for rehabilitation were "fair to good" at best. *Nelson,* 921 F.Supp. at 120, 121. Based on that finding, the district court resolved that, although there was a "reasonable probability" that Nelson could be rehabilitated, his rehabilitation was not "likely." In other words, Nelson's potential for rehabilitation met the lower standard, but not the higher. Concluding that the higher standard should govern, the district court found that Nelson's prospects for rehabilitation supported transfer to adult status. *Id.* at 122.

Finally, the district court brought together the six statutory factors, and the underlying concept of rehabilitative potential:

> The seriousness of the crime clearly weighs in favor of transfer to adult status.... The other statutory factors become relevant principally because of the relationship they have to the prospects of rehabilitation. They are, therefore, entitled to some weight, but are not nearly as important as the second statutory factor (the seriousness of the crime alleged) and the overall question of whether rehabilitation is truly a feasible prospect. Although the other statutory factors either favor continued juvenile status or are neutral, because the two most important [considerations] favor transfer, Nelson's status will be transferred to that of an adult.

*Id.*

Nelson now appeals, arguing only that the court improperly applied the likelihood standard to evaluate his chances of rehabilitation.

## DISCUSSION

██ Although "a mother never realizes that her children are no longer children," Holbrook Jackson, *On a Certain Arrangement in Grey and Black, in All Manner of Folk* 89 (1912), the law does. It provides for the adult prosecution of a juvenile when the government shows that such treatment is in the "interest of justice," as refined by the six statutory factors mentioned above. 18 U.S.C. § 5032. In deciding whether to transfer a juvenile defendant to adult status, the district court need not accord each of the six factors equal weight—the court may balance the factors in any manner it feels appropriate. *Nelson*, 68 F.3d at 588 (citing *Juvenile Male # 1*, 47 F.3d at 71). While we review the district court's "interpretation of the statutory factors *de novo*," *Nelson*, 68 F.3d at 588–89, we will reverse a transfer decision only if the district court has abused its discretion, *id.* at 588; *Juvenile Male # 1*, 47 F.3d at 71.

██ Permeating the transfer decision and the six-factor inquiry is the notion of rehabilitation. "Rehabilitation clearly is one of the primary purposes of the juvenile delinquency provisions." *Nelson*, 68 F.3d at 590. As the district court correctly perceived, the statutory factors have been identified primarily because of their impact on the juvenile's rehabilitative potential. *See Nelson*, 921 F.Supp. at 118.

██ Thus, the district court's assessment of the juvenile defendant's potential for rehabilitation is a crucial determinant in the transfer decision. Indeed, "[the] decision to transfer a juvenile to adult status *is a prediction* of the possibility of rehabilitation if in fact the juvenile is found guilty of the crime alleged." *United States v. Alexander*, 695 F.2d 398, 401 (9th Cir.1982) (emphasis added), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983).

██ Nelson argues that, in evaluating his potential for rehabilitation, the district court blundered when it held that, unless rehabilitation was "likely," his prospects for rehabilitation weighed in favor of transfer. We disagree, and find that the district court's application of a likelihood standard to evaluate Nelson's rehabilitative potential was proper.

██ "[W]hile rehabilitation is a priority, the courts are not required to apply the juvenile justice system ... when it would likely prove to be nothing more than a futile gesture." *Doe*, 871 F.2d at 1253 (citation omitted); *see also Nelson*, 68 F.3d at 590. And, the goal of rehabilitation must be balanced against "the threat to society posed by juvenile crime." *United States v. J.D.*, 525 F.Supp. 101, 103 (S.D.N.Y.1981); *see also Doe*, 871 F.2d at 1253 (" 'the balance must be struck ... between providing a rehabilitative environment for young offenders as well as protecting society from violent and dangerous individuals and providing sanctions for anti-social acts' ") (quoting *United States v. E.K.*, 471 F.Supp. 924, 932 (D.Or.1979)).

A likelihood standard strikes the appropriate balance. It points toward affording a defendant juvenile status when rehabilitation will work (and the rehabilitative goals of the juvenile system will be achieved), and allowing transfer to adult status when it will not (and the concerns of public protection and punishment become paramount). That is perhaps why several other circuits have essentially endorsed the likelihood standard. *See, e.g., United States v. One Juvenile Male*, 40 F.3d 841, 846 (6th Cir.1994) ("rehabilitation was unlikely"); *Alexander*, 695 F.2d at 401 ("likelihood of rehabilitation"). In *In re Sealed Case (Juvenile Transfer)*, 893 F.2d 363 (D.C.Cir.1990), the District of Columbia Circuit stated:

> After weighing the evidence relevant to [the six statutory factors], the court either determines that *the juvenile is likely to respond* to rehabilitative efforts and thus denies transfer or it determines that transfer for [adult] criminal prosecution is in "the interest of justice."

*Id.* at 365 (emphasis added).

It must be emphasized that the statutory command is for transfer to adult status if such transfer is in the "interest of justice." 18 U.S.C. § 5032. There may indeed be a case where, because of the nature of the crime, the age of the offender both at the time of the offense and at the time of the

transfer motion, and other significant factors, transfer to adult status on the basis that rehabilitation is "unlikely" will not advance the interest of justice.

Nonetheless, in the usual case, a likelihood standard is called for. In this case, that standard is particularly appropriate. Nelson is now nearly twenty-one years old, and is accused of a violent and bias-motivated homicide for which he was already tried as an adult in state court. He also has a significant post-offense record, including a state conviction as an adult for aggravated assault which resulted in his banishment from the State of Georgia.

We therefore find that, on the facts of this case, the district court properly applied a likelihood standard in evaluating Nelson's rehabilitative potential. Certainly, because of Nelson's age at the time of the offense and now, the heinous nature of the offense, and the extent of his post-offense record, application of a likelihood standard was consonant with the "interest of justice;" and, the court's conclusion that Nelson should be transferred to adult status was not an abuse of discretion. *See Alexander*, 695 F.2d at 401 (district court's "emphasis on the lack of a likelihood for rehabilitation in light of the [severe] nature of the crime was not an abuse of discretion").

Nelson also maintains that the use of a likelihood standard automatically shifts the burden of proof from the government to the juvenile defendant. *See Nelson*, 68 F.3d at 588 (the burden is on the government to establish that transfer to adult status is warranted). This argument is misplaced. The weight of the burden of persuasion does not dictate on whom that burden falls. While the district court may frame the analytical issue as whether rehabilitation is "likely," the motion to transfer may be granted only when the government proves that rehabilitation is *not* likely. *See United States v. A.R.*, 38 F.3d 699, 706 (3d Cir.1994). And, there is no indication that the district court improperly shifted the burden in this case. Indeed, the court expressly recognized that the burden was on the government, *see Nelson*, 921 F.Supp. at 108, and expressly found that "it

is not 'likely' that Nelson would be rehabilitated," *id.* at 122.

In sum, we find that: (1) the district court's application of a likelihood standard to assess Nelson's potential for rehabilitation was proper under the circumstances; (2) the application of this standard did not impermissibly shift the burden of proof; and (3) the court did not abuse its discretion in determining that a transfer was in the interest of justice.

### CONCLUSION

We have considered all of Nelson's additional arguments, and find them unavailing. Accordingly, the judgment of the district court is AFFIRMED.