UNITED STATES of America, Plaintiff,

v.

LEON D.M., (a juvenile), Defendant.

No. CR 96–301 BB.

United States District Court,
D. New Mexico.

Nov. 5, 1996.

Louis Valencia, Albuquerque, NM, for Plaintiff.

Jerry A. Walz, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING TRANSFER TO ADULT STATUS

BLACK, District Judge.

THIS MATTER is before the Court on the Government's motion to transfer Defendant to adult status. Having taken evidence and considered the briefs and argument of counsel, the Court finds the motion is not well taken and should be DENIED.

### *Discussion*

#### I. *Background*

Defendant, Leon D.M., is charged in a one-count Information with committing an act of delinquency when he was seventeen. Federal jurisdiction of a juvenile is achieved by the Government filing certification pursuant 18 U.S.C. § 5032. In this case, the United States Attorney filed a certification pursuant to the third subsection of Paragraph 1. That subsection provides that the United States Attorney may certify that the offense charged is a felony crime of violence and that there is sufficient federal interest in the case to warrant the exercise of federal jurisdiction.

■■■■ Once a federal proceeding is initiated against a juvenile, the case may proceed by one of two routes. First, the case may proceed as a federal juvenile delinquency proceeding. The purpose of this system is to remove juveniles from the ordinary criminal justice system and provide them with treat-

ment and rehabilitation. *United States v. Frasquillo–Zomosa,* 626 F.2d 99 (9th Cir.), *cert. denied,* 449 U.S. 987, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980); *United States v. J.D.,* 525 F.Supp. 101 (S.D.N.Y.1981). Juvenile delinquency proceedings are subject to the limitations set forth in 18 U.S.C. § 5038 on disclosure of the identity of the juvenile defendant and disclosure of information and records related to the juvenile proceedings. The documents in this case have thus been filed under seal using the juvenile's first name and initials. Moreover, the evidentiary hearing on the Government's motion was held in a closed courtroom.[1]

The second procedure available to the Government is to move to transfer the juvenile to adult status. Where a juvenile is alleged to have committed an act of juvenile delinquency after his fifteenth birthday, the Attorney General may move to transfer the juvenile to adult status. If the motion to transfer is granted, the proceedings become public and standard criminal procedure is followed. In this case, the Government has chosen to seek to proceed against Defendant under this second procedure.

■■■■ A motion to proceed against a juvenile as an adult may be granted when the Court finds, after a hearing, that such transfer would be in the interest of justice. 18 U.S.C. § 5032. "The burden is, of course, on the Government to establish that transfer to adult status is warranted, as there is a presumption in favor of juvenile adjudication." *United States v. Nelson,* 68 F.3d 583, 588 (2d Cir.1995). In determining whether transfer would be in the interest of justice, evidence of the following factors must be considered and findings with regard to each factor should be entered:

1. The age and social background of the juvenile;

2. The nature of the alleged offense;

3. The extent and nature of the juvenile's prior delinquency record;

---

1. Upon petition of the New Mexican, a daily newspaper in Santa Fe, New Mexico, the Court subsequently released selected portions of the testimony from that hearing without identifying Defendant. This testimony related to the nature of the alleged offense and the general availability of programs designed to treat behavioral problems like Defendant's.

4. The juvenile's present intellectual development and psychological maturity;

5. The nature of past treatment efforts and the juvenile's response to such efforts;

6. The availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032, ¶ 5. The Court will now consider these factors *seriatim*.

## II. *The Factors*

### A. Age and Social Background

■ Defendant was three months short of his eighteenth birthday at the time of the crime alleged. This factor is definitely in favor of a transfer.

His social background, however, clearly militates against such transfer. The testimony at the transfer hearing was undisputed that after dropping out of high school at age fifteen, Defendant moved in with Charmane C., a twenty-four-year-old woman who had three children. Defendant's mother, who also lived with Charmane following her own divorce, saw nothing wrong with such a relationship since "they loved each other." At age sixteen, Defendant fathered a child with Charmane. Since Charmane worked off the Pueblo, Defendant was charged with the full-time day-care of his new son as well as that of two-year-old Johnny C., one of Charmane's children from a prior relationship. Defendant was but eight years older than Charmane's oldest child. Testimony from one of Defendant's friends made it clear that although he did not understand the significance of this responsibility, Defendant was now cast in the role of man of the house. Defendant briefly held a part-time job, but mostly spent his time with his friends working on cars.

### B. Nature of the Offense

The Court must assume the truth of the offense charged,[2] and the crime is of the most serious nature—murder. Because of the nature of the crime, it certainly would support transfer.

The Government basically asserts that Defendant caused the death of young Johnny C., then age three, who was under his care. There was medical evidence that Johnny suffered several injuries which could not have been the result of an accident. At the hearing, defense counsel adduced evidence that Johnny C., although three, was not toilet trained and the injuries were consistent with a violent flare of anger during an attempt to discipline the child. Defendant's theory at the hearing appeared to be that under the pressure of caring for four younger children, an immature teenager could easily lose his temper and react with violence. The testimony of Dr. Ross Zumwalt supported this theory. Even though Defendant is charged with a heinous murder, then, the Court should also consider these surrounding circumstances. *United States v. B.N.S.*, 557 F.Supp. 351 (D.Wyo.1983).

### C. Extent and Nature of Defendant's Prior Delinquency Record

Defendant's prior delinquency record is fairly insignificant and would not warrant transferring Defendant to adult status. From evidence adduced at the hearing, it appears that Defendant was actually convicted of only one incident involving malicious mischief, a minor drug violation, and disorderly conduct. He was fined $100.00 for each of the three infractions by the San Juan Tribal Court. Defendant failed to pay the fine and was held in contempt of the Tribal Court. He was arrested and his car impounded until payment was made. Additionally, there was testimony that Defendant smoked marijuana on several occasions. This relatively insignificant juvenile record stands in contrast to other cases where the courts have transferred juveniles to adult status. *See, e.g., United States v. Nelson*, 68 F.3d 583 (2d Cir.1995); *United States v. Alexander*, 695 F.2d 398 (9th Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983); *United States v. One Juvenile*

---

**2.** *United States v. Doe*, 871 F.2d 1248 (5th Cir.), *cert. denied*, 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989).

*Male*, 40 F.3d 841 (6th Cir.1994); *United States v. Jerry Paul C.*, 929 F.Supp. 1406 (D.N.M.1996) (Black, J.); *In re T.W. & R.T., Juvenile Indian Males*, 652 F.Supp. 1440 (E.D.Wis.1987); *United States v. Means*, 575 F.Supp. 1068 (D.S.D.1983).

### D. Defendant's Intellectual Development and Psychological Maturity

Defendant's school records indicate he was a slow learner.[3] The school records show that Defendant did not complete high school and left school at fifteen with failing grades in his academic core subjects. Defendant maintained sporadic employment from the time that he left school. Based on his leaving school early to move in with twenty-four-year-old Charmane, the Court finds this Defendant was not close to intellectual and psychological maturity.

Defendant's lack of scholastic success and limited intellectual ability make it even less likely that he could adequately cope with the demands of an adult woman and a ready-made family. The stress of this domestic situation on a socially immature teenager is difficult to calculate and contributed, almost inevitably, to disaster. This factor cuts against a transfer to adult status.

### E. Nature of Past Treatment Efforts and Defendant's Response to Such Efforts

Prior to the incident which is the basis of the Information, Defendant had not been referred to any counselor and had no prior treatment of any kind. Thus, there have been no treatment efforts prior to this incident and this factor also favors Defendant's retention of juvenile status. *United States v. B.N.S.*, 557 F.Supp. at 351; *compare United States v. Three Male Juveniles*, 49 F.3d 1058 (5th Cir.1995).

**3.** Subsequent to the evidentiary hearing, Defendant submitted the results of a Wechsler Adult Intelligence Scale–Revised administered October 31, 1996. An educational diagnostician read the test to indicate Defendant has a mental age of 14.4 years.

### F. Availability of Programs Designed to Treat Defendant

The purpose of the Federal Juvenile Delinquency Act is to reclaim those young offenders who have the potential for useful citizenship. *United States v. Hill*, 538 F.2d 1072 (4th Cir.1976); *United States v. J.D.*, 525 F.Supp. at 101; *United States v. Borders*, 154 F.Supp. 214 (N.D.Ala.1957), *aff'd*, 256 F.2d 458 (5th Cir.1958). The burden to show that there is a lack of available programs designed to treat Defendant's problems rests with the Government. *United States v. Nelson*, 68 F.3d at 583. A juvenile charged with murder should not be transferred to adult status absent evidence on the availability of programs designed to treat his behavioral problems. *United States v. A.J.M.*, 685 F.Supp. 1192 (D.N.M.1988). For this reason and based on the paucity of evidence presented by the Government at the hearing, the Court requested supplemental briefing on this subject.

The supplemental briefs indicate there are several programs which could provide Defendant with potentially valuable education and counseling. For example, the Government's supplemental brief reports the Southwest Multi–County Correctional Center in North Dakota is a secure facility which has a full educational program including high school, GED and college courses and which houses inmates up to the age of twenty-four. (This is significant since Defendant will be sentenced after he turns eighteen and can therefore be confined until he is twenty-three.) Other facilities with current contracts with the Bureau of Prisons also seem to have appropriate facilities and programs.[4] In his supplemental brief, defense counsel provided a further list of facilities not currently under contract which would likely be willing to accept Defendant and which could provide appropriate counseling in anger management as well as educational opportunities.[5]

**4.** The Corrections Corporation of America and Lake Region Law Enforcement Center fit this category.

**5.** In his supplemental brief, Defendant referenced Ed Liebcott, the Director of Youth for Tomorrow–National Center, who provided a list of several facilities which offer rehabilitative potential for Defendant. Some of these facilities,

**350**

In conclusion, the evidence and pleadings persuade the Court that Defendant was an immature, undereducated teenager who left home at fifteen and found himself in a very demanding family situation. He had not previously demonstrated any violent or dangerous traits. To the contrary, most of the testimony was that Defendant generally attempted to avoid confrontation. Thus, there appears little chance Defendant will be a danger to society and there appears to be a good chance he can be rehabilitated to become a useful member of society. The congressional history of Section 5032 indicates that Defendant should retain juvenile status unless the Court finds there is no reasonable prospect for rehabilitation before his twenty-first birthday. 1974 U.S.C.C.A.N. 5320. In this case, the Court finds Leon D.M. has a reasonable prospect for rehabilitation before his twenty-first birthday.

Now, therefore,

**IT IS ORDERED** that the Government's *Motion to Proceed Against Juvenile as Adult* [# 14] be and hereby is DENIED.

such as New Beginnings Treatment Center, were finalizing contracts with the Bureau of Prisons;

unfortunately, the contractual status of others was unknown.