UNITED STATES of America,
Plaintiff,

v.

A.A.D. (Juvenile), Defendant.

Criminal No. 13–704 (FAB).

United States District Court,
D. Puerto Rico.

Signed March 30, 2015.

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is Magistrate Judge Bruce J. McGiverin's Report and Recommendation ("R & R"), (Docket No. 130), finding that this case meets the criteria for permissive transfer of defendant A.A.D. to adult status for prosecution and recommending that the United States' motion to transfer, (Docket No. 11), be granted. A.A.D. timely objected to the R & R, (Docket No. 131).

The Court has examined the record of the transfer proceedings and the parties' filings, including the United States' motion to transfer, (Docket No. 11), its memorandum in support of transfer, (Docket No. 127), A.A.D.'s opposition to the motion to transfer, (Docket No. 129), and A.A.D.'s objections to the R & R, (Docket No. 131). For the reasons the follow, the Court **ADOPTS** the magistrate judge's R & R, **GRANTS** the United States' motion to transfer, and **ORDERS** defendant A.A.D. to be transferred to adult status for prosecution.

## I. LEGAL STANDARDS

### A. Report and Recommendation

A district court may refer a pending dispositive motion in a criminal case to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Cr. P. 59(b); Loc. R. 159(a). A party may file written objections to the report and recommendation, and the district court must consider *de novo* those portions of the magistrate judge's report to which objection is made. *See* 28 U.S.C. § 636(b)(1); Fed.R. Crim.P. 59(b). In conducting its review, the district court "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge

with instructions." Fed.R. Crim.P. 59(b)(3).

## B. Transfer Criteria

■■■ Transfer of a juvenile to adult status for criminal prosecution is governed by 18 U.S.C. § 5032 ("section 5032") of the Federal Juvenile Delinquency Act ("the Act"), 18 U.S.C. § 5031 *et seq.* The purpose of the Act is to " 'remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation.' " *United States v. Female Juvenile, A.F.S.,* 377 F.3d 27, 32–33 (1st Cir.2004) (quoting *United States v. Brian N.,* 900 F.2d 218, 220 (10th Cir.1990)). The Court "must balance these important interests against the need to protect the public from violent and dangerous individuals." *United States v. Male Juvenile E.L.C.,* 396 F.3d 458, 461 (1st Cir.2005) (internal quotation marks and citations omitted). "There is a presumption in favor of juvenile adjudication and, therefore, the burden is on the government to establish that transfer to adult status is warranted." *Id.*

■■■ Pursuant to section 5032, a juvenile may be proceeded against as an adult if three criteria are met: (1) the juvenile is alleged to have committed an act that if committed by an adult would be a felony crime of violence or one of the enumerated offenses; (2) the juvenile was fifteen years of age or older when he allegedly committed the act; and (3) the Court finds after a hearing that transfer would be in the interest of justice. 18 U.S.C. § 5032. Regarding the third criterion, the Court must consider evidence and make findings regarding the following six factors to determine whether transfer would be in the interest of justice: (1) the juvenile's age and social background, (2) the nature of the alleged offense, (3) the extent and nature of the juvenile's prior delinquency

record, (4) the juvenile's current intellectual development and psychological maturity, (5) the nature of past treatment efforts and the juvenile's response to those efforts, and (6) the availability of programs designed to treat the juvenile's behavioral problems. *Id.* The Court " 'is not required to give equal weight to each factor but may balance them as it deems appropriate.' " *Male Juvenile E.L.C.,* 396 F.3d at 461 (quoting *United States v. Leon D.M.,* 132 F.3d 583, 589 (10th Cir.1997)).

## II. DISCUSSION

■■■ A.A.D. does not object to the magistrate judge's findings as to the first two section 5032 criteria for permissive transfer: (1) that A.A.D. is alleged to have committed a carjacking that resulted in death, which is an act that would be a felony crime of violence if committed by an adult, and (2) that A.A.D. was seventeen years and eight months old when he allegedly committed the act, and thus was older than fifteen. A.A.D. objects only to the magistrate's finding as to the third section 5032 criterion: that transferring A.A.D. to adult status for criminal prosecution would be in the interest of justice. Because A.A.D. raises objections to the magistrate judge's findings regarding each of the six statutory factors for evaluating whether transfer is in the interest of justice, the Court addresses each factor in turn.

## A. A.A.D.'s Age and Social Background

### 1. Age

■■■ Courts consider the juvenile's age at the time the offense was committed and his age at the time of the transfer proceeding. *See, e.g., United States v. Nelson,* 68 F.3d 583, 589 (2d Cir.1995). The closer the juvenile is to eighteen at the time of the offense, the more transfer is favored. *See, e.g., United States v. Juvenile Male,* 554 F.3d 456, 468–69 (4th

Cir.2009) (juvenile's age of seventeen years and nine months favored transfer); *United States v. Juvenile No. 1,* 118 F.3d 298, 308 (5th Cir.1997) (juvenile's age of seventeen years and six months favored transfer). Age at the time of the transfer proceeding is also relevant in considering whether juvenile rehabilitation programs would be appropriate and effective, especially considering that "the more mature a juvenile becomes, the harder it becomes to reform the juvenile's values and behavior." *Nelson,* 68 F.3d at 589 (quotation marks and citation omitted).

A.A.D. was born on January 12, 1996. (Docket No. 41–1 at p. 1.) The alleged offense was committed on September 8, 2013, and A.A.D. was arrested on September 26, 2013. (Docket No. 123 at pp. 151, 182.) The transfer hearing was held on April 25 and 28, 2014. (Docket Nos. 120–123.) Thus, A.A.D. was seventeen years and eight months old at the time the alleged offense was committed, just four months shy of his eighteenth birthday. He was eighteen at the transfer hearing, and he is now nineteen years old. The Court accordingly finds that this factor weighs in favor of transfer.

**2. Social Background**

 Factors relevant to social background include supportiveness of family environment, work ethic, and conduciveness to supervision. *United States v. Juvenile K.J.C.,* 976 F.Supp. 1219, 1225–26 (N.D.Iowa 1997). The juvenile's social background is especially relevant in considering the juvenile's likelihood for rehabilitative success. *See Juvenile No. 1,* 118 F.3d at 308.

The evidence of A.A.D.'s social background comes primarily from the personal narrative A.A.D. reported to Dr. Jaime Grodzinski–Schwartz during his psychological evaluation and from details A.A.D. related to F.B.I. Agent Gretel Pieloch during his post-arrest interview. A.A.D. never met his biological parents, and his adoptive parents raised him. (Docket No. 41–1 at p. 2.) He has two half sisters, but does not keep in contact with them. *Id.* A.A.D. described his mother as a good woman and his father as a strict man who would physically punish him. *Id.* When he was fifteen, his adoptive father relinquished custody to the Family Department, which placed A.A.D. in a series of foster homes, where he felt a lack of affection. *Id.* A.A.D. ran away from one of the foster homes with a friend and stayed in an apartment at a public housing project. *Id.* This friend pressured A.A.D. to join him in several robberies in order to be able to stay in the apartment. *Id.* A.A.D.'s social worker from the Family Department was unable to keep up with A.A.D. because he was moving from place to place. (Docket No. 123 at p. 158.) A.A.D. was not legally employed, but had twice worked as a lookout for a drug point. *Id.* at pp. 167–68, 180.

It is certainly possible for a juvenile with a troubled social background to thrive in a rehabilitative environment. Here, however, the Court finds that A.A.D.'s lack of a supportive family environment to which to return, the fact that he absconded from the Family Department's supervision while under its custody, and his history of living with adult friends who were involved in criminal activity, taken together lessen his prospects of successful rehabilitation in the juvenile system. The Court therefore finds that the social background factor weighs in favor of transfer.

**B. Nature of the Alleged Offense**

 For purposes of a transfer determination, the Court "may assume the truth of the government's allegations regarding the defendant's commission of the crime." *United States v. McQuade Q.,* 403 F.3d

717, 718 n. 1 (10th Cir.2005) (internal quotation marks and citation omitted). The Court may also consider evidence regarding the specifics of the offense because that information relates to the "nature" of the offense and can be "quite relevant to determining the prospects for [the juvenile's] rehabilitation." *In re Sealed Case (Juvenile Transfer)*, 893 F.2d 363, 370 (D.C.Cir.1990). A finding that "the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms" weighs in favor of transfer, "but the absence of this factor shall not preclude such a transfer." 18 U.S.C. § 5032.

A.A.D. is alleged to have committed a carjacking with intent to cause death or serious bodily harm. (Docket No. 3.) F.B.I. Agent Gretel Pieloch testified at the transfer hearing about A.A.D.'s participation in the commission of the offense. According to her testimony, A.A.D. told her that on September 8, 2013, A.A.D. was at his friend Pedro's residence when an individual known as Mueca—the kingpin of the housing project—showed up and told A.A.D. to come downstairs. (Docket No. 123 at pp. 157, 179.) When A.A.D. went downstairs, he saw two vehicles: a grey Toyota Camry with the victim in the passenger's seat and Victor Duluc–Mendez (an adult also charged with the commission of this offense) in the driver's seat, and a black Hundai with Mueca and Pedro inside. *Id.* at p. 158. Mueca then told A.A.D. to retrieve A.A.D.'s pistol, which had been in A.A.D.'s possession in Pedro's residence. *Id.* at p. 183. A.A.D. retrieved the pistol and sat in the backseat of the Toyota Camry. *Id.* at pp. 158–59. A.A.D. admitted to Agent Pieloch that he owned the pistol. *Id.* at p. 159.

The two cars drove, stopped at a convenience store and an ATM, and then stopped in a rural area. (Docket No. 123 at pp. 159–60, 191.) A.A.D., Mueca, Pedro, and the victim exited the vehicles. *Id.* at pp. 160–61, 176. Mueca told A.A.D. to kill the victim. *Id.* at p. 176. A.A.D. pointed the pistol towards the center of the victim's head and fired one round, shooting the victim in the forehead and killing him. *Id.* at pp. 177, 204. A.A.D. told Agent Pieloch that he believed he was picked to participate in the crime in order to validate himself within the housing project, and that he killed the victim because he feared that Mueca would kill him. *Id.* at p. 179. A.A.D. admitted that he was not under the influence of drugs or alcohol at the time of the commission of the offense. *Id.* at pp. 182–83.

The nature of the offense is serious and exhibits a total disregard for human life. A.A.D. argues that the gravity of the offense should be mitigated because A.A.D. was a "coerced follower" who killed the victim out of fear that he himself would be killed by the adult who recruited him. (Docket No. 131 at pp. 2–4.) The Court accepts A.A.D.'s narrative as he told it to Agent Pieloch, and finds that rehabilitation may be easier and faster for a juvenile like A.A.D. as opposed to a juvenile who played a leadership role, influenced others, and did not act under coercion. Nonetheless, the Court finds that the grave nature of the offense weighs in favor of transfer.

## C. Nature and Extent of A.A.D.'s Delinquency Record

The lack of a prior juvenile delinquency record weighs against transfer and in favor of juvenile treatment because it indicates an increased likelihood of rehabilitation. *See United States v. M.L.*, 811 F.Supp. 491, 495 (C.D.Cal.1992). Here, the Government stipulated that A.A.D. has no prior delinquency record. Thus, the

Court finds that this factor weighs against transfer.

## D. A.A.D.'s Present Intellectual Development and Psychological Maturity

██ Transfer to adult status is less favored for juveniles who exhibit low intellectual development and stunted psychological maturity because they are viewed as less responsible for their conduct. *See United States v. J.D.*, 525 F.Supp. 101, 103–04 (S.D.N.Y.1981).

Dr. Jaime Grodzinski–Schwartz evaluated A.A.D. on December 16, 2013, for a total of five hours. (Docket No. 123 at pp. 15, 38.) Dr. Grodzinski testified at the transfer hearing, *id.* at pp. 11–112, and his report was made available to the Court, (Docket No. 41–1). Dr. Grodzinski first inquired into A.A.D.'s psychiatric, psychological, and education history. (Docket No. 41–1 at pp. 2–3.) A.A.D. informed Dr. Grodzinski that he was evaluated by a psychiatrist at the age of nine and was prescribed medication for depression and anxiety. *Id.* at p. 2. A.A.D. received psychiatric treatment three times a month. *Id.* His adoptive father had taken him to the appointments, and A.A.D. continued to receive treatment when custody was transferred to the Family Department. *Id.* A.A.D. was a special education student who needed individual tutoring for his learning difficulties, and he completed the tenth grade. *Id.* at p. 3; Docket No. 123 at p. 54.

Dr. Grodzinski also administered fourteen psychological and neuropsychological tests on A.A.D. (Docket No. 41–1 at p. 1.) Dr. Grodzinski found that A.A.D. shows average intellectual development. *Id.* at p. 9. A.A.D.'s total IQ is average in comparison to his age group, which is consistent with the test results obtained in 2011. *Id.* at pp. 7–8. Dr. Grodzinski also found that A.A.D. is psychologically fully mature in comparison to his age group. (Docket No. 123 at p. 39.) He has a coherent and well-organized way of thinking. *Id.* at pp. 38, 110. He can solve problems, look for alternatives, self-monitor, and self-correct. *Id.*

A.A.D. now argues that Dr. Grodzinski "failed to do even the minimum amount of work required to validate his conclusions." (Docket No. 131 at p. 10.) A.A.D. did not, however, offer evidence to rebut Dr. Grodzinski's findings and conclusions.[1] The Court finds that Dr. Grodzinski's evaluation was thorough, and accepts his conclusion that A.A.D. has an average intellectual development and psychological maturity. This factor, therefore, weighs in favor of transfer.

## E. Nature of Past Treatment Efforts and A.A.D.'s Response to Those Efforts

██ Transfer to adult status is favored if a juvenile has a history of not responding well to treatment efforts because future efforts to rehabilitate the juvenile are more likely to be futile. *United States v. Juvenile Male*, 844 F.Supp.2d 333, 347 (E.D.N.Y.2012) (granting transfer where juvenile received treatment in a detention center, was released, and then reverted to criminal activity).

A.A.D. has received psychological treatment since the age of nine. (Docket No. 41–1 at pp. 2–3.) He continued to receive that treatment when the Family Department took over custody of him at the age of fifteen, and a psychiatrist would visit A.A.D. while he was in foster homes. *Id.*

---

1. On December 10, 2013, the magistrate judge granted A.A.D. until January 31, 2014, to file a psychological report of an expert witness of his choosing. (Docket Nos. 28–29.) A.A.D. never filed a report, however, and did not call a single witness at the transfer hearing.

But A.A.D. eventually ran away from his foster home and began living with a friend in a public housing project. *Id.* at p. 2. His Family Department social worker could not locate him. (Docket No. 123 at p. 158.)

There is no information in the record as to A.A.D.'s response to past psychological treatment efforts, other than his decision to abscond from the custody of the Family Department, which presumably resulted in the discontinuance of his treatment. The Court therefore finds that this factor weighs neither in favor nor against transfer.

## F. Availability of Programs Designed to Treat A.A.D.'s Behavioral Problems

As to the final factor, the Court considers the availability of programs for similarly-aged juveniles, how the juvenile would fit into the programs, and how much time the programs would be available to the juvenile. *See Nelson,* 68 F.3d at 590–91.

Darryl Cash, a Federal Bureau of Prisons ("BOP") employee who oversees juvenile facilities in the western region, testified at the transfer hearing. He explained that when an individual is adjudicated in the federal juvenile system, BOP staff determine which juvenile facility would be appropriate for the individual before placing her or him there. (Docket No. 123 at p. 139.) In making that placement determination, the BOP considers the individual's treatment and programming needs, among other things. *Id.* at p. 115. Juvenile facilities are predicated on treatment program completion, and they offer programs for cognitive principal restructuring, "thinking errors," anger management, chemical dependency treatment, life skills, and education. *Id.* at pp. 116–17, 128–31.

Juveniles also receive mental health assessments when they arrive at juvenile facilities, and mental health programs are provided as needed. *Id.* at p. 129.

Mr. Cash testified that the programs offered in juvenile facilities are also available in adult facilities, with three primary differences: (1) program participation is optional in adult facilities and mandatory in juvenile facilities; (2) program formatting is geared toward an adult audience in adult facilities, and toward a juvenile audience in juvenile facilities; and (3) adult facilities offer more extensive vocational programming opportunities than juvenile facilities offer. (Docket No. 123 at pp. 116–18, 140, 143.) The staff-to-offender ratio is one to eight during waking hours and one to sixteen during sleeping hours in juvenile facilities, whereas in adult facilities the ratio is one to three hundred or four hundred. *Id.* at pp. 122–23. The favorable ratio in juvenile facilities allows staff to give more one-on-one attention and respond to behavior situations more quickly. *Id.* at pp. 123–24.

The maximum term of official detention for juveniles between the ages of eighteen and twenty-one at the time of disposition is governed by 18 U.S.C. § 5037(c)(2).[2] Regardless of the official detention period, Mr. Cash testified that offenders adjudicated as juveniles may stay in juvenile facilities only until they reach the age of twenty-one. (Docket No. 123 at p. 120.) Juveniles adjudicated as adults, however, can remain in a juvenile facility up to the age of eighteen. *Id.*

Although a juvenile detention facility may be best positioned to provide the behavioral and mental health programs that could benefit A.A.D., he could also take advantage of these optional programs in an

---

**2.** If A.A.D. is adjudicated as a juvenile, his maximum term of official detention would be "the lesser of[ ] five years[ ] or the maximum of the guideline range ... applicable to an otherwise similarly situated adult defendant." 18 U.S.C. § 5037(c)(2)(A).

adult facility. On balance, therefore, the Court finds that this factor does not weigh either for or against transfer.

### G. Summary Evaluation of the Six Factors; Interest of Justice

The Court has considered and weighed the six section 5032 factors to determine whether transfer of A.A.D. to adult status would be in the interest of justice. Three factors weigh in favor of transfer, one weighs against, and two are neutral. The Court places primary emphasis on A.A.D.'s age and the gravity of the alleged offense. *See Male Juvenile E.L.C.*, 396 F.3d at 463 ("[T]he weight to be given each factor is left to the discretion of the district court."); *United States v. Smith*, 178 F.3d 22, 27 (1st Cir.1999) ("Courts have unanimously held that a district court does not abuse its discretion in placing primary emphasis on the gravity of the juvenile's offense."). Importantly, A.A.D. was nearly eighteen when the alleged offense was committed. Moreover, the nature of the offense is serious: A.A.D. allegedly participated in a carjacking that ended with A.A.D. shooting the victim in the forehead. In its ultimate balancing, the Court determines that the United States has overcome the statutory presumption that favors treating A.A.D. as a juvenile. The United States has met its burden in demonstrating that the interest of justice requires a transfer of A.A.D. to adult status for prosecution.

### III. CONCLUSION

The Court, having made an independent examination of the entire record pertinent to the transfer proceeding in this case and independent findings regarding the section 5032 transfer criteria, **ADOPTS** the magistrate judge's Report and Recommendation, (Docket No. 130), and **GRANTS** the United States' motion to transfer, (Docket No. 11.) The Court **ORDERS** A.A.D. to be transferred to adult status for criminal prosecution.

**IT IS SO ORDERED.**