**UNITED STATES of America, Appellee,**

v.

**Juan RAMIREZ, also known as "Tony TKO", also known as "Scarface"; Luis Ramirez; Ernesto Martinez, also known as "Ene"; Justin Perez, also known as Gem; Haydee Huertas; LNU1–98CR0438–006, also known as Rafaelito; Albert Colon; Shirley Calcano; Freddy Santiago; Jose Colon, also known as Mike; Odiot Demetrius, also known as J. Boogie; Manuel Gonzalez, also known as Manny; Julio Castillo, also known as Tito, Defendants,**

**LNU2–98CR0438–014, also known as John Doe # 2, Defendant–Appellant.**

**United States of America, Appellee,**

v.

**Juan Ramirez, aka "Tony TKO", aka "Scarface"; Luis Ramirez; Ernesto Martinez, aka "Ene"; Justin Perez, aka Gem; Haydee Huertas; LNU1–98CR0438–006, aka Rafaelito; Albert Colon; Shirley Calcano; Freddy Santiago; Jose Colon, aka Mike; Odiot Demetrius, aka Boogie; Julio Castillo, Defendants,**

**Manuel Gonzalez, aka Manny, Defendant–Appellant.**

**Docket Nos. 00–1664, 00–1564.**

United States Court of Appeals, Second Circuit.

Argued: May 21, 2001 and Sept. 28, 2001.

Decided: July 30, 2002.

Larry H. Krantz, Krantz & Berman, LLP, New York, NY, for Defendant–Appellant LNU2–98CR0438–014.

David W. Windley, Brooklyn, NY, for Defendant–Appellant Manuel Gonzalez.

Joshua G. Berman, Assistant United States Attorney, (Mary Jo White, United States Attorney for the Southern District of New York; Meir Feder, Daniel M. Gitner, and Gary Stein, Assistant United States Attorneys, on the briefs), New York, NY, for Appellee.

Before: WALKER, Chief Judge, OAKES, JACOBS, SOTOMAYOR, Circuit Judges, and LARIMER, Chief District Judge.*

* The Honorable David G. Larimer, Chief Judge of the United States District Court for the Western District of New York, sitting by designation.

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant LNU2–98CR0438–014 ("Doe # 2") appeals from a September 14, 2000 order transferring him to adult status under the discretionary transfer provisions of 18 U.S.C. § 5032, entered by the United States District Court for the Southern District of New York (Robert L. Carter, *District Judge*). Defendant-appellant Manuel Gonzalez appeals from an August 8, 2000 judgment of conviction and sentence entered by the same court following his plea of guilty; he primarily argues that the district court erred in granting the government's motion to transfer him to adult status.

Oral arguments were heard in the appeals of Doe # 2 and Gonzalez by two panels of this court on May 21, 2001, and September 28, 2001, respectively.[1] Because the separate appeals involve common issues of law and fact, we have consolidated them for the purposes of disposition on appeal. We write only to address defendants' challenges to the district court's orders transferring them to adult status. A summary order issued simultaneously with this opinion disposes of additional issues on appeal raised by Gonzalez.

Because we conclude that the district court did not abuse its discretion in transferring the defendants from juvenile to adult status, the district court's orders and judgments are affirmed.

## BACKGROUND

The defendants were charged under the Juvenile Delinquency Act ("JDA"), 18 U.S.C. § 5031 *et seq.*,[2] for juvenile delinquency allegedly arising out of their involvement in the 165th Street Organization, a multi-state criminal enterprise based in the Bronx whose members, the indictment alleged, engaged in interstate narcotics trafficking and various violent acts. Defendant LNU2–98CR0438–014 is referred to herein as "Doe # 2" to preserve his anonymity. Although defendant Manuel Gonzalez was originally indicted as "John Doe # 1," we refer to him by name because he has already been convicted and sentenced as an adult. On appeal, both defendants argue that the district court erred in granting the government's motions to transfer them from juvenile to adult status under the discretionary transfer provisions of the JDA, 18 U.S.C. § 5032, which allow a juvenile to be prosecuted as an adult in federal court "in the interest of justice."

## PROCEDURAL HISTORY

### I. John Doe # 2

The juvenile information filed against defendant Doe # 2 on March 15, 2000 charged him with ten acts of juvenile delinquency occurring between 1994 and 1999, including armed robbery, kidnapping, murder, racketeering, and the possession and distribution of powder and crack cocaine.

Doe # 2 is specifically charged with participating in, *inter alia*, the March 15, 1995 armed robbery, kidnapping, and murder of Francis Soto, as well as a May 22, 1996 armed robbery. After the 1996 armed robbery, Doe # 2 pled guilty in New York state court to a felony charge of criminal possession of a weapon for which he was

---

**1.** Doe # 2's appeal was heard by Chief Judge Walker, Circuit Judge Jacobs, and District Judge Larimer; Gonzalez's appeal was heard by Chief Judge Walker and Circuit Judges Oakes and Sotomayor.

**2.** The JDA proscribes "juvenile delinquency," which is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." 18 U.S.C. § 5031.

sentenced to one to three years' imprisonment. Doe # 2 was released on parole in 1997 and was later rearrested in 1999 for violating his parole.

On April 19, 2000, the government moved to prosecute Doe # 2 as an adult pursuant to the discretionary transfer provisions of 18 U.S.C. § 5032. As required by the JDA, the United States Attorney for the Southern District of New York certified that (1) Doe # 2 is a juvenile as defined by 18 U.S.C. § 5031; (2) the charged offenses include violent felonies; and (3) there is a substantial federal interest in this case. *See* 18 U.S.C. § 5032.

The district court held a hearing on August 10 and 14, 2000, to determine whether to transfer Doe # 2 to adult status. Finding that rehabilitation was unlikely in Doe # 2's case and that a transfer to adult status was warranted in the interest of justice, the district court ordered the transfer. *United States v. Doe # 3*, 113 F.Supp.2d 604, 610 (S.D.N.Y.2000).[3] It is from that order that Doe # 2 appeals.

## II.   Manuel Gonzalez

The juvenile information filed against Gonzalez on September 18, 1998 charged him with eleven acts of juvenile delinquency between 1994 and 1998, including charges of racketeering, murder, attempted murder, kidnapping, Hobbs Act robbery, and using and carrying firearms in relation to crimes of violence.

Specifically, the information charged Gonzalez with, *inter alia*, conspiracy; the March 15, 1995 armed robbery, kidnapping and murder of Francis Soto; a June 1995 assault and attempted murder in Reading, Pennsylvania; possession with intent to distribute cocaine, crack, and heroin; and illegal possession of firearms.

On September 18, 1998, the government moved to prosecute Gonzalez as an adult pursuant to the discretionary transfer provisions of 18 U.S.C. § 5032. As required by the JDA, the United States Attorney for the Southern District of New York certified that (1) Gonzalez is a juvenile as defined by 18 U.S.C. § 5031; (2) the charged offenses include violent felonies; and (3) there is a substantial federal interest in this case.

Thereafter, in a letter to the district court dated May 28, 1999, the government argued that transfer was required under the mandatory provision of 18 U.S.C. § 5032.[4] The district court held a hearing on July 28, 1999 to determine whether transfer was appropriate under either the mandatory or discretionary provisions of § 5032. In an opinion dated August 23, 1999, Judge Carter denied the government's motion for a mandatory transfer, but granted the government's motion for a discretionary transfer on the grounds that rehabilitation was not likely in Gonzalez's case, and that such transfer was warranted in the interest of justice. *United States v. Doe # 1*, 74 F.Supp.2d 310, 321 (S.D.N.Y. 1999).

---

3.   Defendant Doe # 2 was originally indicted as John Doe # 3. He was later denominated John Doe # 2 after defendant Gonzalez was transferred to adult status.

4.   The JDA provides that an individual "who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense" involving the use of force, or a substantial risk of force, or that constitutes one of a number of enumerat-

ed offenses, "and who has previously been found guilty of an act which if committed by an adult would have been one of the [enumerated] offenses set forth in this paragraph ... *shall* be transferred" to adult status for criminal prosecution. 18 U.S.C. § 5032 (emphasis added). *See United States v. Juvenile Male # 1*, 47 F.3d 68, 69 (2d Cir.1995) (discussing mandatory transfer provisions of JDA).

Although Gonzalez filed a notice of appeal on August 23, 1999 to challenge the transfer order, the appeal was later withdrawn pursuant to a stipulation, dated November 23, 1999, signed by Gonzalez, his attorney, and the government. Also on November 23, following lengthy plea discussions, the district court accepted Gonzalez's plea of guilty to one count of racketeering in violation of 18 U.S.C. §§ 1961 and 1962; one count of committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); and one count of using and carrying a firearm during a crime in violation of 18 U.S.C. § 924(c). The plea agreement stipulated that Gonzalez's sentence would be thirty-five years' imprisonment, and he expressly waived his right to appeal the stipulated sentence.

On February 28, 2000, Gonzalez filed a *pro se* motion to withdraw his guilty plea. However, on March 20, 2000, he withdrew his *pro se* motion and the district court took his guilty plea again. At the hearing, the district court expressly questioned Gonzalez about his waiver of the right to appeal his sentence in the following colloquy:

> The Court: You understand that under this agreement, if you are sentenced either at or below the guidelines, that you waive your right to appeal; do you understand this?
>
> The Defendant: Yes, I do.
>
> The Court: And that you, indeed, give up your right to appeal, except for a sentence that's inconsistent with the guideline; do you understand that?
>
> The Defendant: Yes, I understand that.

Thereafter, the district court entered a judgment of conviction on August 8, 2000, under which it sentenced Gonzalez to thirty-five years of imprisonment, three years of supervised release, and a mandatory special assessment of $150. On appeal, Gonzalez primarily argues that the district court abused its discretion in transferring him from juvenile to adult status.

## DISCUSSION

■ As an initial matter, we note that, although an order transferring a defendant from juvenile to adult status is not a final judgment, "it is an order that is immediately appealable under the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)." *United States v. Doe*, 49 F.3d 859, 865 (2d Cir.1995); *see also United States v. Juvenile Male # 1*, 47 F.3d 68, 70–71 (2d Cir.1995). Thus, we have appellate jurisdiction over Doe # 2's appeal from the district court's transfer order. Our jurisdiction over Gonzalez's appeal from the district court's final judgment of conviction is conferred by 28 U.S.C. § 1291. *See United States v. Ferguson*, 246 F.3d 129, 138 (2d Cir.2001).

### I. Applicability of the JDA

Because Doe # 2 and Gonzalez are currently twenty-three and twenty-four years old, respectively, we first address the question of whether the JDA continues to apply to cases in which the defendant attains the age of twenty-one during the pendency of the prosecution. As a general matter, the JDA governs the prosecution of juveniles who have violated federal law, termed in the JDA an "act of juvenile delinquency." 18 U.S.C. §§ 5031 & 5032.

A "juvenile" is "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." *Id.* § 5031. Under the scheme set forth in the JDA, a juvenile between eighteen and twenty-one who is prosecuted by informa-

tion for federal offenses committed before the age of eighteen and who is found guilty of committing an act of juvenile delinquency is subject to probation or "official detention" for no more than five years, a term which is normally considerably less than the prison term that an adult who committed the same crime would receive. *Id.* § 5037(b)(2) & (c)(2). By its terms, the JDA does not apply to a person who commits a federal offense on or after the age of eighteen or to a person indicted after the age of twenty-one. *Id.* § 5031.

Notwithstanding the commission of a crime before the age of eighteen and the filing of a juvenile information before the age of twenty-one, the JDA authorizes the district court to transfer a juvenile to adult status under certain circumstances. Depending on the case, prosecution as an adult may be either mandatory or discretionary. The JDA requires that a juvenile be transferred to adult status where "a juvenile fifteen years and older [is] alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence or [one of a number of enumerated offenses]." 18 U.S.C. § 5032, ¶ 4. In the alternative, the statute permits the discretionary transfer of a juvenile to adult status when such prosecution is found to be "in the interest of justice." *Id.; see also id.* ¶ 5.

■ The JDA's juvenile proceeding and adult transfer provisions thus apply in cases where a defendant commits a crime before his or her eighteenth birthday and is under twenty-one at the time the juvenile information charging the crime is filed. *See United States v. Wong,* 40 F.3d 1347, 1365 (2d Cir.1994) ("[T]o determine whether the JDA governs a prosecution, a court should look to the defendant's age at the time of the offense or offenses charged

in the indictment."); *United States v. Hoo,* 825 F.2d 667, 670 (2d Cir.1987).

■ The JDA, however, does not expressly state whether it continues to apply where, as here, a defendant commits a crime before age eighteen and is charged before his or her twenty-first birthday but turns twenty-one during the pendency of the criminal proceedings. Doe # 2 is currently twenty-three years of age, *Doe # 3,* 113 F.Supp.2d at 605; Gonzalez is presently twenty-four, *Doe # 1,* 74 F.Supp.2d at 316. Because the JDA applies to the prosecution of " 'juveniles' who are charged with having committed acts of 'juvenile delinquency,' " *Hoo,* 825 F.2d at 669, the panel that heard Doe # 2 requested further briefing on the question of whether the JDA continues to apply to his case. In letter briefs submitted to the court following oral argument, both Doe # 2 and the government contend that the JDA continues to apply to the prosecution of a defendant who has attained the age of twenty-one during the pendency of the criminal proceedings. We agree.

Courts have uniformly concluded that the applicability of the JDA is determined by the defendant's age at the time of filing the juvenile information. *See Hoo,* 825 F.2d at 670 (interpreting juvenile as defined in 18 U.S.C. § 5031 to "apply only to criminal proceedings that begin before the defendant reaches the age of twenty-one"); *see also United States v. Smith,* 851 F.2d 706, 710 (4th Cir.1988) (concluding that jurisdiction under the JDA does not terminate when a defendant reaches the age of twenty-one); *accord United States v. Doe,* 631 F.2d 110, 113 (9th Cir.), *cert. denied,* 449 U.S. 867, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980); *United States v. Rivera,* 912 F.Supp. 70, 75 (S.D.N.Y.1995).

In addition, in *Smith* and *Doe,* the Fourth and Ninth Circuits expressly concluded that the JDA permits the district

court to continue to exercise its juvenile jurisdiction where a defendant is indicted while under twenty-one but attains the age of twenty-one during the criminal proceedings. *Smith,* 851 F.2d at 709–10; *Doe,* 631 F.2d at 112–13. As the Fourth Circuit observed in *Smith,* "the [JDA] itself contemplates that jurisdiction over someone [who turns twenty-one during the proceedings] is not automatically lost once he attains the age of 21." *Smith,* 851 F.2d at 710 (citing 18 U.S.C. § 5037(b)). Otherwise,

> [i]n cases in which an alleged offender was nearing twenty-one, the government would be forced either to postpone the initiation of a proceeding so that the accused could be treated as an adult, or to rush the proceeding to its conclusion so that the case would reach disposition before the accused's twenty-first birthday. Neither course is desirable.

*Doe,* 631 F.2d at 113.

Because of the uncertainty and possible waste of resources that would result if the JDA ceased to apply when a defendant attained the age of twenty-one, we agree with the Fourth and Ninth Circuits and hold that the district court properly exercised its jurisdiction under the JDA in this case. Since the juvenile informations against Doe # 2 and Gonzalez were filed when each was twenty years old, we conclude that the JDA continues to apply to their criminal prosecutions notwithstanding that they are now over twenty-one.

## II. Transfers from Juvenile to Adult Status

As mentioned above, a juvenile defendant's transfer to adult status has significant sentencing implications. Under the JDA, 18 U.S.C. § 5037, a defendant between the ages of eighteen and twenty-one who is charged with juvenile delinquency may receive a maximum sentence of five

years' imprisonment, *id.* § 5037(c)(2)(A), or three years' probation, *id.* § 5037(b)(2)(A). In this case, Doe # 2 faces possible life imprisonment if prosecuted as an adult. Gonzalez, who has already been convicted as an adult, was sentenced to a prison term of thirty-five years.

■ Accordingly, we turn to whether the district court abused its discretion in determining that the transfers of Doe # 2 and Gonzalez to adult status are "in the interest of justice" under the discretionary transfer provisions of 18 U.S.C. § 5032. Because "there is a presumption in favor of juvenile adjudication," the burden is "on the government to establish that transfer to adult status is warranted." *United States v. Nelson,* 68 F.3d 583, 588 (2d Cir.1995) ("*Nelson I* ").

In evaluating whether a transfer determination is in the interest of justice, the district court must consider and make findings on the record with respect to each of six factors. *See* 18 U.S.C. § 5032. The factors are:

> [1] the age and social background of the juvenile; [2] the nature of the alleged offense; [3] the extent and nature of the juvenile's prior delinquency record; [4] the juvenile's present intellectual development and psychological maturity; [5] the nature of past treatment efforts and the juvenile's response to such efforts; [and] [6] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032, ¶ 5. *See generally Doe,* 49 F.3d at 867 (discussing the six factors).

■ The district court's decision to transfer a juvenile to adult status "is a discretionary one and will not be disturbed except upon our finding of an abuse of discretion. A district court is said to abuse its discretion when it fails to make

the required factual findings or where the findings it does make are clearly erroneous." *Nelson I*, 68 F.3d at 588 (citation omitted). Accordingly, "[t]his Court will not upset a district court's determination simply because we would have reached a different conclusion had we considered the matter in the first instance." *Juvenile Male # 1*, 47 F.3d at 71. In addition, we must take as true the allegations against the defendants for the purposes of appeal. *Nelson I*, 68 F.3d at 585, 589.

■■■■ "The six statutory factors need not be accorded equal weight by the district court," which is free to balance the factors in accordance with the facts of each case. *Nelson I*, 68 F.3d at 588; *see also Juvenile Male # 1*, 47 F.3d at 71. Indeed, the nature of the offense and a defendant's potential for rehabilitation are often properly given special emphasis. As we have previously held, "when a crime is particularly serious, the district court is justified in weighing [the second] factor more heavily than the other statutory factors." *Nelson I*, 68 F.3d at 590. However, in balancing the factors, the district court must keep in mind that "[p]ermeating the transfer decision and the six-factor inquiry is the notion of rehabilitation. . . . [T]he goal of rehabilitation must be balanced against 'the threat to society posed by juvenile crime.'" *United States v. Nelson*, ("*Nelson II*"), 90 F.3d 636, 640 (2d Cir.1996) (quoting *United States v. J.D.*, 525 F.Supp. 101, 103 (S.D.N.Y.1981)). In evaluating a defendant's potential for rehabilitation, the district court should consider whether there is a "likelihood" that rehabilitation will work in his or her case. *Id.* at 640–41.

Here, Judge Carter made careful factual findings with respect to the six statutory factors as required by § 5032, correctly applied our precedent, and explained his transfer determinations in thorough, well-reasoned opinions as to each defendant.

*See Doe # 3*, 113 F.Supp.2d 604 (Doe # 2); *Doe # 1*, 74 F.Supp.2d 310 (Gonzalez). There was no abuse of discretion.

### A. John Doe # 2

Because Doe # 2 was between fifteen and eighteen at the time of his alleged crimes, he is eligible for prosecution as an adult. *See* 18 U.S.C. § 5032. In determining whether transfer would be in the interest of justice, the district court considered and made findings on the record regarding each of the six enumerated statutory factors. *Doe # 3*, 113 F.Supp.2d at 605–09; *cf. Nelson I*, 68 F.3d at 588–89; *Doe*, 49 F.3d at 867–68.

■■■ Specifically, the district court found that while Doe # 2's age at the time of the crimes and psychological maturity weighed neither for nor against his transfer, *Doe # 3*, 113 F.Supp.2d at 609, his social background, his present intellectual development, and the availability of programs designed to treat his behavioral problems were three factors that weighed against his transfer to adult status. *Id.*

On the other hand, the seriousness of the crimes alleged and Doe # 2's recidivist behavior weighed in favor of transfer. *Id.* at 610. In addition, the district court properly considered his current age as a factor in support of transfer. As we explained in *Nelson I*, "current age is significant for a determination of whether juvenile-type rehabilitation programs would be appropriate for the individual subject of the transfer application." *Nelson I*, 68 F.3d at 589.

At the time of the 1995 Soto murder and his arrest for the 1996 armed robbery, Doe # 2 was fifteen and seventeen years old, respectively. *Doe # 3*, 113 F.Supp.2d at 605. However, he was twenty when the government filed the information against him, and twenty-one when the district

court ordered the transfer. As the district court explained, these latter factors weighed in favor of transfer:

> Defendant is charged with a host of serious crimes, including murder and other acts of violence, that arise out of his alleged involvement with a criminal organization. The disturbing nature of these crimes; defendant's continued involvement in them even after his parole from state prison; his prior conviction for criminal possession of a loaded gun; and his arrest for armed robbery in 1993, heighten the court's concern about the threat he poses to society. Of equally grave concern to the court is defendant's demonstrated tendency to revert to criminal behavior. Defendant had already been given at least one opportunity to straighten his life out when he was paroled, yet he apparently continued to engage in narcotics trafficking and other crimes. Although the court recognizes that while on parole defendant was not provided with the resources, supervision and guidance necessary for him to fully benefit from rehabilitation, it cannot disregard his lack of motivation to change and his confessed inability to cope with the commonplace pressures of school and work. Defendant's parole violation is particularly troubling given the financial and parental responsibilities he shares for raising his young daughter but which he largely abdicated upon his return to prison.

*Doe # 3*, 113 F.Supp.2d at 610 (citations omitted).

In sum, the able district court considered and made factual findings as to all six statutory factors, did not clearly err in doing so, and reasonably weighed the factors under the circumstances. *See Doe*, 49 F.3d at 868. We thus find no abuse of discretion by the district court in granting the government's motion to transfer Doe

# 2 to adult status for purposes of criminal prosecution.

### B. *Manuel Gonzalez*

The government argues at the outset that, by pleading guilty and waiving his right to appeal, Gonzalez waived his right to appeal the district court's transfer order. Normally, a knowing and intelligent guilty plea "waives all challenges to the prosecution except those going to the Court's jurisdiction." *United States v. White*, 237 F.3d 170, 174 (2d Cir.2001) (quoting *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987)). While that may be true here as well, we need not decide the question because, in any event, we conclude that the district court did not abuse its discretion in transferring Gonzalez to adult status.

■ In making its transfer determination with respect to Gonzalez, the district court considered and made factual findings as to each of the six statutory factors, reasonably balanced them, and concluded that transfer was warranted in the interest of justice. *Doe # 1*, 74 F.Supp.2d at 316–20, 321. The district court found that several factors weighed against transfer, including Gonzalez's social background, present intellectual development and psychological maturity, his response to past treatment, and the availability of certain rehabilitation programs designed to treat his behavior problems. *Id.* at 320. However, in deciding to grant the transfer motion, the district court expressed particular concern about the seriousness of the crimes with which defendant was charged and his recidivist tendency. *Id.* at 321. As the district court explained:

> [D]efendant is charged with a host of serious crimes, including murder and other acts of violence, that arise out of his alleged involvement with a criminal organization. The nature of these

crimes, and the fact that defendant has already been convicted of robbery, heightens the court's concerns about the threat to society posed by juvenile crime. Of paramount concern to the court is [Gonzalez's] demonstrated tendency to revert to criminal behavior. While defendant emphasizes that he was under the influence of [co-defendant] Juan Ramirez, there is evidence that he committed crimes on his own accord. The primary example is his participation in a drug smuggling and distribution operation at Riker's Island during his incarceration for his robbery conviction.... As rehabilitation is a primary purpose of the federal delinquency provisions, including § 5032, and the government has demonstrated by a preponderance of the evidence that rehabilitation is not likely in this case, the court finds that transfer of [Gonzalez] to adult status is warranted.

*Id.* (citations omitted).

As with Doe # 2, the district court carefully considered and made findings as to each of the relevant factors, committed no error in doing so, and balanced the factors reasonably. *See Doe,* 49 F.3d at 868. Accordingly, we will not disturb the district court's grant of the government's motion to transfer defendant Gonzalez to adult status. For this reason and after rejecting Gonzalez's remaining arguments on appeal in an accompanying summary order, his judgment of conviction is affirmed.

### CONCLUSION

The district court's order as to Doe # 2 and judgment as to Gonzalez are affirmed.