# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3284

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Juvenile Male MC, | * |
| | * |
| Appellant. | * |

_____

No. 01-3285

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Juvenile Male WW, | * |
| | * |
| Appellant. | * |

Appeals from the United States
District Court for the
District of Nebraska

_____

Submitted: April 19, 2002

Filed: November 13, 2002

_____

_____

Before HANSEN, Chief Judge, and McMILLIAN and MORRIS SHEPPARD
     ARNOLD, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

     Appellants, MC and WW, juveniles, appeal from orders and judgments entered by the United States District Court for the District of Nebraska,[1] transferring them for criminal prosecution as adults, pursuant to 18 U.S.C. § 5032. Appellants contend that the district court abused its discretion in ordering the transfers. We disagree and affirm.

**BACKGROUND**

     The government's evidence presented at the transfer hearings was as follows. On June 23, 2001, at 4:45 p.m., the body of Brandon Horn (Horn) was discovered in a field of tall grass located in the Omaha Indian Reservation in Thurston County, Nebraska. The field was approximately 60 yards north of Unit 95, the residence of MS, a friend of both appellants. Horn was found naked, covered in bruises, and lying face down in a pool of blood. An autopsy determined that the cause of death was a subdural hematoma to the left side of the head caused by a blunt force trauma. The autopsy also determined that Horn had been alive for about twelve hours before he died at 3:00 p.m. on June 23 and probably would have survived if he had received medical treatment earlier that day.

     The night before the discovery of Horn's body, Horn and MS were at MS's house. During a fight between the two, a group of individuals, including Wayne

---

[1]The Honorable Joseph F. Battaillon, United States District Judge for the District of Nebraska.

-2-

Bertucci, Kareem Robinson, Angel Merrick, MC, who was 17 years old, and WW, who also was 17 years old, came to MS's house. The group had been drinking and socializing at a nearby residence and went to MS's house to find and assault an individual named "Keenan,"[2] who had insulted WW earlier that evening. Bertucci brought along a video camera to videotape the beating of Keenan. Although Keenan was not at MS's house, the group joined with MS in beating Horn until he was unconscious. Bertucci taped a portion of the beating, but stopped when he saw blood. Bertucci urged the others to stop and left when the beating continued. MS dragged Horn, unconscious and virtually naked, out onto the porch and continued beating, kicking, and stomping on him. Merrick and another person dragged Horn to the field where he was found. While Horn was being taken to the field, MC and WW assaulted Horn's brother. After the assaults, the group talked and laughed about them. MC returned to the field the next morning and saw that Horn was still alive. However, MC did not try to help Horn or summon aid.

MC, WW, MS, Merrick, and Robinson[3] were charged with second degree murder and with assault resulting in serious bodily injury. Pursuant to 18 U.S.C. § 5032, the government moved for transfers of WW, MC, and MS to the district court for criminal prosecution as adults. As relevant here, § 5032 provides for a mandatory transfer if a juvenile committed an offense after his sixteenth birthday, the offense involved the use of physical force and would have been a felony if committed by an adult, and the juvenile had previously been convicted of such an offense. In addition, the statute provides for a discretionary transfer "in the interests of justice." Under the discretionary transfer provision, a district court must consider and make findings concerning the nature of the alleged offense, the juvenile's age, social background, prior delinquency record, intellectual development, psychological maturity, past

---

[2]It is unclear whether the individual is named "Keenan" or Keegan." We will refer to him as "Keenan."

[3]Merrick and Robinson were charged as adults.

treatment efforts and responses to them, and availability of programs designed to meet behavioral problems. In addition, a district "court must balance the likelihood of rehabilitation before the juvenile reaches majority with the risk of harm to the public from treating violent crime more leniently." United States v. Juvenile JG, 139 F.3d 584, 586 (8th Cir. 1998) (Juvenile JG).

At separate hearings on the motions, the government presented evidence relating to the statutory factors. At WW's hearing, among other things, the government presented evidence that WW had been expelled from school twice and had an extensive tribal court juvenile record, including convictions for burglary, aggravated assault, and aggravated weapons offenses. A juvenile probation officer testified that WW had been referred for alcohol and psychiatric evaluations three times and had shown up for one appointment, but that his mother never consented to further evaluation or treatment. Dr. Cynthia Topf, a clinical psychologist, testified on WW's behalf. Dr. Topf testified that WW had lived with several relatives over the years, had a polysubstance abuse problem, had a borderline IQ, impaired judgment, and a conduct disorder. Although the doctor believed that WW should be treated a juvenile, she admitted that there were limited juvenile treatment options.

The government's evidence at MC's hearing revealed that he had left school in the ninth grade, was unemployed, lived with his sister, had an extensive tribal court juvenile record, and, despite six tribal court orders for substance abuse and psychiatric evaluations, he had not been evaluated. Dr. Judy Magnuson, a clinical psychologist, testified on MC's behalf. Dr. Magnuson testified that MC had a substance abuse problem, depressive disorder, and oppositional defiant disorder, which meant that he had difficulty with authority figures and was likely to be non-compliant. She also testified that MC had not fully cooperated in intellectual and psychological testing, which resulted in scores lower than his actual abilities. The doctor recommended placement in a juvenile facility, but admitted that MC would benefit from supervised release following a discharge from an adult facility.

After the hearings, the district court granted the government's motion to transfer MC and WW, but denied it as to MS. With respect to WW, the district court believed that his tribal court conviction for aggravated assault qualified as statutory predicate offense for a mandatory transfer under § 5032. However, because this court had never addressed the question of whether a tribal court conviction qualified as a statutory predicate offense, the district court went on to balance the statutory factors for a discretionary transfer, as it also did for MC and MS. As to all the juveniles, the district court noted "the heinous, senseless nature of the crime." As to both WW and MC, the district court especially noted their extensive juvenile records and that they had not followed through with court-ordered evaluations. As to MS, the district court noted that, despite the brutality of the attack, it would deny the government's motion for transfer because MS was "salvageable."

## DISCUSSION

We review the district court's decisions to transfer WW and MC to adult status for an abuse of discretion, and "the underlying factual findings for clear error." United States v. Juvenile MLA, 157 F.3d 616, 617 (8th Cir. 1998).[4]

Appellants do not, and could not, dispute the district court's characterization of Horn's murder as "heinous" and "senseless." Nor do they dispute that "when a crime is particularly serious, the district court is justified in weighing [that] factor more heavily that the other statutory factors." United States v. Ramirez, 297 F.3d 185, 193 (2d Cir. 2002) (internal quotation omitted). Instead, they try to minimize their role in Horn's beating. For example, WW asserts that he "only" kicked Horn seven times. MC asserts that he was not responsible for the fatal blow. However, the

---

[4]Because we hold that the district court did not abuse its discretion in granting a discretionary transfer as to WW, we do not address his arguments concerning a mandatory transfer.

district court carefully considered their roles in the offense. Among other things, the district court noted that WW had led the group to MS's house and that, although MC found Horn still alive the day after the beating, he did nothing to aid Horn.

WW and MC also take issue with the district court's weighing and balancing of the other statutory factors. However, "[t]he district court is not required to afford equal weight to each factor, but instead may balance them as it deems appropriate." United States v. Juvenile Male # 1, 47 F.3d 68, 71 (8th Cir. 1995); see also Juvenile JG, 139 F.3d at 586-87 ("weight assigned to any one factor listed in the statute is within the sound discretion of the district court"). In these cases, "the seriousness of the offense and [appellants'] juvenile record[s] weighed in favor of transfer." Id. at 587.

WW also argues that the district court abused its discretion because it did not grant the government's transfer motion as to MS. Although the government does not agree with the district court's decision as to MS, the government did not appeal it, and we do not review it. In any event, as the government asserts, the district court's denial of the motion to transfer MS does not aid WW in showing an abuse of discretion. The district court's decisions were based on the evidence presented as to each juvenile and on an individualized weighing and balancing of the statutory factors. In particular, we note the fact that the district court denied transfer as to MS because it found him "salvageable" reflects its care in balancing the likelihood of rehabilitation with the risk of public harm by "treating violent crime more leniently." Id. at 586.

We hold that the district court did not abuse its discretion in granting the government's motion to transfer MC and WW to adult status, pursuant to 18 U.S.C. § 5032. Accordingly, we affirm the judgments.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT