In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2498

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LESLIE J. WOODS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 15-CR-30074 — **Michael Reagan**, *Chief Judge.*

ARGUED JANUARY 7, 2016 — DECIDED JULY 1, 2016

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* The government filed a juvenile information against Leslie Woods III,[1] on May 18, 2015, charg-

---

[1] The defendant was previously identified solely as LJW pursuant to 18 U.S.C. § 5038, which provides that a juvenile's name and picture shall not be made public unless the individual is prosecuted as an adult. Because we affirm the district court's transfer of Woods to adult prosecution,

ing him with multiple offenses related to two armed robberies. At the time the government charged Woods he was 20, but at the time of the crime he was 15 and thus, under the Juvenile Delinquency and Protection Act ("Juvenile Act"), Woods was considered a juvenile. The United States moved under the Juvenile Act to transfer Woods's case for adult prosecution. After a hearing, the district court granted that motion and transferred the case against Woods for adult prosecution. Woods filed this interlocutory appeal. We affirm.

## I.

According to the information filed by the government, when he was 15 years old, Woods and several other gang members robbed two convenience stores. The first robbery occurred on June 17, 2010, when Woods drove three masked and armed gang members to the Best Stop convenience store in Cahokia, Illinois. Woods waited in the car while the other three entered and robbed the store of over $11,000. During this robbery one customer was shot and another customer was grazed by a bullet. Three weeks later, on July 8, 2010, Woods, the same three gang members, and another accomplice robbed the Mini-Mart gas station in Cahokia, Illinois. Woods shot the clerk several times. The clerk survived, but was in critical condition and permanently injured.

Nearly five years later, on May 18, 2015, the United States filed a juvenile information against Woods, charging him with two counts of conspiracy to interfere with commerce by robbery, two counts of interference with commerce by robbery, and two counts of using and carrying a firearm during

---

we refer to him by name and the proceedings, previously sealed, shall be unsealed.

a crime of violence. The government charged Woods under the Juvenile Justice and Delinquency Act ("Juvenile Act"), 18 U.S.C. § 5031 *et. seq.* The Juvenile Act provides that the government cannot try a juvenile for federal crimes until he is transferred to adult status pursuant to the Juvenile Act. Accordingly, at the same time that the government filed the information against Woods, it moved to transfer the case for adult prosecution.

Although Woods was 20 years old at the time the information was filed, he was 15 at the time he allegedly committed the charged offenses. Under the Juvenile Act, a juvenile is defined as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency a person who has not attained his twenty-first birthday." 18 U.S.C. § 5031. In turn, under the Juvenile Act, "juvenile delinquency" is defined as a violation of federal law "committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." *Id.*

To charge Woods under the Juvenile Act, the Attorney General was required to certify that the case should be transferred for adult prosecution because it meets certain factors, which are not at issue here. *United States v. Jarrett*, 133 F.3d 519, 535 (7th Cir. 1998). The Attorney General must also certify that "there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5031; *see id.* Additionally, the government must submit the juvenile's court records as a jurisdictional prerequisite to a transfer proceeding. *Id.* at 535–36. Finally, if those three conditions are met, as they undisputedly are in this case, "the district court must decide whether the juvenile's transfer to

adult status is 'in the interest of justice.'" *Id.* at 536 (quoting 18 U.S.C. § 5031).

Section 5032 of the Juvenile Act sets forth specific factors the district court must consider in assessing whether the transfer is in the interest of justice. This section requires the court to make factual findings on:

> (1) the age and social background of the juvenile;
> (2) the nature of the offense;
> (3) any prior delinquency record;
> (4) the present intellectual development and psychological maturity;
> (5) past treatment efforts and the juvenile's response to such efforts;
> (6) the availability of programs to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.

In this case, the district court held a hearing to receive evidence concerning these factors. At this hearing, the government presented as evidence a DVD containing video surveillance of the robberies, as well as an affidavit from an FBI agent elaborating on the details of the charged robberies. The video surveillance of the first robbery did not depict Woods because he was alleged to be the getaway driver, but it showed the other individuals involved in the offense and showed one of the gang members shooting a customer. The agent's affidavit also noted that a woman who had pulled up in the parking lot as the gang was fleeing was shot, but luckily only grazed. The second video showed the robbery of the Mini-Mart and, according to the government, depicted Woods entering the store with a long rifle and shooting the cashier in the chest, arm and hand.

The government also presented evidence from an officer familiar with Woods and his gang involvement, as well as testimony from Woods's juvenile probation officer. Specifically, St. Louis County Police Detective Joseph Percich described, in detail, the Dead End Gang involvement in the area and Woods's extensive involvement with the gang. Additionally, Woods's state juvenile-probation officer testified in detail about Woods's extensive involvement in the juvenile justice system and her role in providing court-ordered supervision for two drug-related charges. She explained that Woods's first juvenile case was for a drug-related charge and that, while it was closed, only a few months later a second juvenile petition was filed against him for drug-related offenses. She also explained that Woods was involved with the Dead End Gang and would not end that affiliation. She further elaborated on the various services offered to Woods and that "[h]e never took accountability at any point." She added that she recommended Woods for a residential program to remove him from the negative influences in his life, but he was rejected because of his "gang affiliation and his willingness to fight and cause harm." The juvenile-probation officer further testified that she had concluded "there were no additional resources that I could afford him," and at that point she recommended that he be placed in the custody of the Division of Youth Services, where minors are detained in a locked, secure, residential facility because they are a risk to society and are not benefitting from juvenile services. She ended her direct testimony by saying, "in the 15 years that I've done this work it is unfortunate but Leslie was the first child that I truly feared and was concerned about what harm he could do to the community."

Following the hearing, the district court found that Woods's social background was marked by criminal activity

and gang involvement and that at his current age (one week shy of 21), the juvenile-rehabilitation programs would not be of much benefit. The court found the second factor likewise supported transfer, given that Woods was alleged to have been involved in two violent armed robberies and had shot and seriously injured an individual in the second robbery. The third factor also supported transfer, the district court concluded, because Woods had an extensive juvenile record starting at the age of 12 and involving more than 30 separate incidents that resulted in referrals to juvenile court. The fourth factor (intellectual development and psychological maturity) the district court weighed neutrally. But the court found the fifth factor also weighed in favor of transfer because Woods had responded poorly to past treatment programs. Finally, the court found the sixth factor weighed in favor of transfer because he was unlikely to benefit from juvenile programs given his age. The court then concluded that the totality of the factors supported transfer, and entered an order transferring Woods for adult prosecution. Woods appeals.[2]

## II.

On appeal, Woods argues the district court erred in transferring him for adult prosecution under the Juvenile Act. At oral argument, we asked the parties whether Woods was still considered a juvenile under the Juvenile Act given that he is now over 21 and his trial had not yet begun. We directed the parties to address that question in supplemental briefing. In their supplemental briefs, the government and Woods both

---

[2] "[A]n order issued under § 5032 is immediately appealable as a collateral order…" *United States v. J.J.K.*, 76 F.3d 870, 871–72 (7th Cir. 1996).

maintain that such defendants are still considered juveniles under the Juvenile Act.[3]

Every circuit which has considered this issue has held that the Juvenile Act "permits the district court to continue to exercise its juvenile jurisdiction where a defendant is [charged] while under twenty-one but attains the age of twenty-one during the criminal proceedings." *United States v. Ramirez*, 297 F.3d 185, 191–92 (2d Cir. 2002); *United States v. Smith*, 851 F.2d 706, 710 (4th Cir. 1988); *United States v. Martin*, 788 F.2d 696, 697–98 (11th Cir. 1986); *United States v. Doe*, 631 F.2d 110, 112–13 (9th Cir. 1980). These courts reasoned that jurisdiction under the Juvenile Act is determined at the time the case is initiated, and thus, the fact the defendant later turns twenty-one is irrelevant. *Ramirez,*297 F3d at 191; *Smith*, 851 F.2d at 709; *Martin*, 788 F.2d at 697; *Doe*, 631 F.2d at 112–13. Further, *Ramirez* and *Doe* explained that retaining jurisdiction under the Juvenile Act is contemplated by the statute even after a defendant turns twenty-one because otherwise, in cases where the defendant was nearing that milestone, "'the government would be forced either to postpone the initiation of a proceeding … or to rush the proceeding to its conclusion … Neither course is desirable.'" *Ramirez*, 297 F.3d at 192 (quoting *Doe*, 631 F.2d at 113). We see no reason to part ways with these circuits and, accordingly, we conclude that the Juvenile Act continues to apply even though Woods is now over twenty-one. We therefore consider whether the district court erred in

---

[3] We also asked the parties whether it would be appropriate to use Woods's name and they agreed that, if we hold transfer was appropriate, his identity need no longer be sealed.

ordering Woods transferred for adult prosecution under the Juvenile Act.

We review the district court's decision to transfer a juvenile for adult prosecution for an abuse of discretion. *See Jarrett*, 133 F.3d at 536. In this case, the district court did not abuse its discretion in transferring Woods to adult court. As discussed below, the district court thoroughly and conscientiously considered the factors Congress laid out for consideration.

The court found that the first factor, Woods's age and social background, weighed strongly in favor of transfer. While noting that Woods had a close relationship with his parents, the court added that he was placed under the protection of the court for more than a year because of threats his mother had made. The court also looked at Woods's educational background and explained that he had been suspended from school and placed in an alternative learning program, which he left after incidents with both staff and a fellow student. However, he did earn his GED at a second alternative school, but was later incarcerated at the Division of Youth Services. In evaluating this factor, the court further reviewed Woods's juvenile record, which included a history of charges related to drug possession, as well as his involvement in the Dead End Gang, which began when he was 13 years old. Additionally, the court noted that Woods had a long history of criminal activity which also included three adult felony convictions for offenses which occurred after the robberies alleged in the information. Taken together, the court viewed these facts as supporting transfer, and the court did not abuse its discretion in reaching this conclusion.

The district court next considered the nature of the alleged offenses, which at the transfer stage requires the district court

to presume the truth of the allegations. The court found this factor also weighed heavily in favor of transfer because the crimes charged were two armed robberies which involved multiple weapons and resulted in serious injuries. The court also stressed that, during the second robbery, Woods shot the store clerk multiple times, resulting in the clerk suffering critical injuries and the permanent loss of the use of his right arm and hand. The district court did not abuse its discretion in evaluating this factor.

The third factor, the prior juvenile-delinquency findings, the district court also found weighed in favor of transfer because Woods's juvenile history demonstrated extensive involvement with the juvenile system, an escalation of criminal activity, and the lack of success in rehabilitation. In evaluating this factor, the district court summarized six juvenile cases involving Woods, beginning with referrals for burglary and assault when he was only 13 years old. Again, there was no abuse of discretion in the court's evaluation of this factor.

The fourth factor, which looked at the defendant's present intellectual development and psychological maturity, the district court found to be neutral. The court noted that Woods had completed his GED and that there was no indication of intellectual or psychological deficits. As a result, the court found his legal issues were "more behavioral than psychological or intellectual." We see no abuse of discretion in the court evaluating this factor as neutral.

Next, the district court considered past treatment efforts and Woods's response. The district court noted that "the juvenile system has made numerous efforts to assist the Defendant, with little or no success." The district court noted that Woods responded poorly to the various programs. The

court also stressed that Woods's escalating behavior demonstrated that the numerous prior attempts to rehabilitate him did not have any positive influence, and accordingly found this factor weighed in favor of transfer. We also see no abuse of discretion in this conclusion.

Finally, the district court considered the availability of programs to treat Woods's behavioral problems. Here the court concluded that the nature of his crimes precluded any form of juvenile rehabilitation in Illinois, because under the Illinois Juvenile Act an armed robbery committed with a firearm was not subject to juvenile proceedings. The Juvenile Act only provided for treatment for individuals under 21 and because Woods was nearly 21 at the time of the hearing, he also wouldn't benefit from services. The district court found this factor weighed in favor of transfer and again we find no abuse of discretion in this finding.

Notwithstanding the district court's thorough and conscientious evaluation of the six factors, Woods argues that the district court abused its discretion by ordering him transferred to adult prosecution. First, Woods posits that the district court wrongly shifted the burden to him to prove he had a positive response to previous rehabilitative treatment and would not have responded to current treatment. However, contrary to his position, the district court did not place the burden on Woods. Rather, the court considered the evidence of Woods's continued criminal behavior and the absence of available state juvenile programs to conclude that Woods had not benefitted from, and would not in the future benefit from, juvenile programs. There was no abuse of discretion in that analysis.

Woods also complains that at the time of the offense he was 15 years old, and had the government promptly filed charges against him, he could have benefitted from available juvenile programs. That is unlikely given that, even though he had been offered many juvenile programs, his behavior escalated to the point where at age 15 he shot and severely injured an individual. But in any event, the pertinent question is whether Woods would now benefit from programs and, in assessing this factor, it is Woods's current age that is significant. *United States v. Ramirez*, 297 F.3d 185, 193-94 (2d Cir. 2002). The district court found that because he was almost 21, he would not benefit from any juvenile programs, and there was no abuse of discretion in the court taking his age into account to reach this conclusion.

Finally, Woods complains that the district court gave little weight to the fact that his juvenile-probation officer had recommended he be placed in a program outside his mother's home, but that no such placement occurred. Woods stresses that the juvenile-probation officer had determined that his mother had played a role in his reluctance to fully engage in the available juvenile programs. He argues that the district court should have considered the state's failure to provide him with the recommended treatment outside of his mother's influence in evaluating his response to treatment. The district court, though, discussed Woods's relationship with his mother and her failure to support the rehabilitative efforts. The district court did not need to further elaborate on these facts. Further, any benefit to Woods flowing from consideration of his mother's negative influence would be offset by the reason he was never placed in such a treatment program— Woods was so violent that no residential program would accept him. There was no abuse of discretion here either.

In sum, the district court thoroughly analyzed each required factor and found that "balancing the possibility of rehabilitation for the offender against the threat to the public posed by juvenile crime … the transfer of the Defendant to adult criminal prosecution is in the interest of justice." This conclusion was amply supported by the record and, accordingly, there was no abuse of discretion in the district court's decision to transfer Woods for adult prosecution.

### III.

The government sought to prosecute Leslie Woods III as an adult for multiple criminal counts related to two armed robberies he allegedly committed while he was 15. After a hearing on the government's motion to transfer him to adult prosecution, the district court concluded that transfer was appropriate. In reaching this decision the district court thoroughly analyzed the required factors and its decision was not an abuse of discretion. Accordingly, we AFFIRM and REMAND for further proceedings.